Argued and submitted June 10, 1999, affirmed on appeal and cross-appeal
January 26, 2000

Susan STALEY,
*Respondent - Cross-Appellant,*

*v.*

Duane TAYLOR
and Janet Taylor,
*Appellants - Cross-Respondents.*

(96-4789; CA A101516)

994 P2d 1220

Hunter B. Emerick argued the cause for appellants - cross-respondents. With him on the briefs was Saalfeld, Griggs, Gorsuch, Alexander & Emerick.

James A. Bjornsen argued the cause and filed the briefs for respondent - cross-appellant.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

Defendants built their home in a way that partially blocked plaintiff's ocean view. Plaintiff sued alleging, among other things, breach of an express contract, breach of an implied contract, and fraud. The trial court entered judgment in plaintiff's favor on the implied contract claim and in defendants' favor on the express contract and fraud claims. Defendants appeal and plaintiff cross-appeals. We affirm on both the appeal and the cross-appeal.

■    Because this case arises on defendants' motion for a directed verdict and their motion for judgment notwithstanding the verdict, we state the facts in the light most favorable to plaintiff. *See Hill v. Mayers*, 104 Or App 629, 632, 802 P2d 694 (1990), *rev den* 311 Or 187 (1991). In 1987, defendants purchased an unimproved lot in Depoe Bay. The next year, plaintiff purchased the lot next to and south of defendants' lot. Both lots are ocean-front properties. Plaintiff built a home on her lot shortly after she purchased it. Initially, the parties enjoyed a cordial relationship. Over the years, defendants made several statements to plaintiff that when they built a house on their lot they would not block her view.

In 1995, defendants began planning the construction of their home. Because defendants' lot is small and irregularly shaped, they sought a variance from the city to reduce the required side setbacks on the property. During a dinner party at plaintiff's home in March 1995, defendants reiterated that when they built their home they would not block plaintiff's view. Defendants also thanked plaintiff for her earlier help in trying to get a street vacated. Plaintiff responded, "Anything that I can do for somebody that isn't going to block my view, I'll do it." At the end of the dinner party, as defendants were leaving, one of them said, "Oh, by the way, would you mind signing a letter of support for our variance." Plaintiff repeated that "anybody that was going to protect my view, I would do just about anything for them." Plaintiff asked defendants to send her a proposed letter that she could copy and submit in support of their application for variance. They did so, and plaintiff submitted the letter.[1]

---

[1] Plaintiff's letter stated, in part:

Defendants' variance request drew opposition from several other neighbors, who either wrote letters in opposition or objected at the variance hearing that defendants' proposed home would negatively affect their views. Plaintiff, however, did not attend that hearing or voice any opposition to defendants' request. The Depoe Bay Planning Commission granted defendants' request in April 1995, and they began construction on their home. When completed, defendants' house partially blocked plaintiff's view from her dining-room window, contrary to what defendants had allegedly promised her. Defendants could have built a house without a variance that would have partially blocked plaintiff's view. The house they built with the variance resulted in an additional restriction of plaintiff's view.[2]

As noted above, plaintiff sued for breach of an express contract, breach of an implied contract, and fraud. Plaintiff introduced evidence on only one measure of damages. She offered evidence on the difference between what defendants allegedly promised and what they actually did; that is, she offered evidence on the difference between the value of her house with an unrestricted view and its value with her view restricted by the house defendants built.[3] She offered no evidence on the difference between the value of her home if defendants had built their house without a variance and partially blocked her view and its value with the house

---

"I fully support [defendants'] variance request as it will allow them to build on their lot in a manner that reduces the total height of the building. This will minimize the impact on my view and on other property owners' view. If the variance is not approved they would still be entitled to build on the lot but may be forced to build a much higher structure that would be within the code parameters but would be more view obstructing to everyone. Therefore, I urge you to approve [defendants'] variance request."

[2] Plaintiff did not dispute below that defendants could have constructed a house without the variance that would have, because of its height, partially blocked her ocean view. Plaintiff understood that if defendants received a variance, then they would build a wider, lower house, the roof line of which would be below her window and thus not block her view. Although defendants built a wider house after they received the variance, they did not build a lower one. Because of the way the two houses sit in relation to the ocean, the house that defendants built with the variance marginally increased plaintiff's loss of her ocean view by three-and-one-half degrees.

[3] Plaintiff's expert testified that her home was worth $30,000 less than if defendants had not blocked her view at all.

defendants built, which resulted in an additional, incremental loss of her view.

At the close of plaintiff's case, defendants moved for a directed verdict on plaintiff's express and implied contract claims.[4] They argued that there was insufficient evidence of a promise to support either claim. Alternatively, they argued that there was no evidence of damages for breach of either claim. The trial court granted a directed verdict on plaintiff's express contract claim because "[t]here was no meeting of the minds." It declined to grant a directed verdict on plaintiff's implied contract claim. It reasoned that a contract could be implied because plaintiff acted to her detriment "based on reasonable reliance" and that there was sufficient evidence of damages for breach of an implied contract to go to the jury.

The jury returned a verdict in plaintiff's favor on both the implied contract and fraud claims. It awarded her $30,000 in economic damages on her implied contract claim and $30,000 in economic damages and $10,000 in emotional distress damages on her fraud claim. Defendants moved for judgment notwithstanding the verdict on both claims, but the court granted their motion only on the fraud claim. It accordingly entered judgment in plaintiff's favor for $30,000 on the implied contract claim. Defendants have appealed and plaintiff has cross-appealed from the judgment.

We begin with defendants' appeal. Defendants assign error to the trial court's ruling denying their motion for directed verdict on plaintiff's implied contract claim. Defendants' argument on appeal is limited. They do not dispute that there was sufficient evidence from which a reasonable juror could find that an implied contract was formed. They argue instead that there was no evidence of damages for its breach. Defendants' argument is based on two separate propositions. They argue initially that two Supreme Court decisions, *Drulard v. Le Tourneau*, 286 Or 159, 593 P2d 1118 (1979), and *Frankland v. City of Lake Oswego*, 267

---

[4] Defendants also moved for a directed verdict on plaintiff's fraud claim, which the court denied.

Or 452, 517 P2d 1042 (1973), establish that plaintiff is entitled only to reliance damages for breach of an implied contract. The plaintiff in *Frankland,* however, was suing because the defendant violated a zoning ordinance, *see* 267 Or at 455, and the plaintiff in *Drulard* was suing because the defendant had not complied with the building restrictions for a platted subdivision, *see* 286 Or at 161. Neither case was a contract case, and neither provides a basis for determining the proper measure of damages for breach of an implied contract.

Defendants advance a second, more complex argument. Defendants start from the proposition that plaintiff's implied contract claim is based on the theory of promissory estoppel that we recognized in *Neiss v. Ehlers,* 135 Or App 218, 899 P2d 700 (1995). In *Neiss,* we held that promissory estoppel may be used to enforce some promises that would otherwise be too indefinite to form a binding contract and that a plaintiff's remedy for the breach of such a promise may be limited to reliance damages. *Id.* at 229.[5] Starting from that proposition, defendants argue that plaintiff's implied contract claim must fail because plaintiff never introduced any evidence of her reliance damages. She only introduced evidence of the damages she suffered because defendants failed to keep their promise.

Because defendants' argument appears to reflect an ambiguity inherent in the term "implied contract," we first discuss the different types of claims that term can encompass. We then explain why the trial court correctly ruled that there was sufficient evidence of damages to submit plaintiff's implied contract claim to the jury.

---

[5] The term promissory estoppel has been used to refer to two separate concepts. The courts have recognized that actions taken in reliance on a definite promise may serve as a substitute for consideration "even though the action was not bargained for by the promissor and was not performed as an agreed exchange for the promise." Arthur Linton Corbin, 1A *Corbin on Contracts* § 194 (1963); *Schafer et al v. Fraser et ux,* 206 Or 446, 472, 290 P2d 190 (1955), 294 P2d 609 (1956); *Bixler v. First Nat. Bank of Oregon,* 49 Or App 195, 199, 619 P2d 895 (1980). When promissory estoppel serves as a consideration substitute, the plaintiff is entitled to the usual contractual remedies. We also have recognized that promissory estoppel may be used when a party acts in reliance on an indefinite promise to create a binding obligation but that only reliance damages may be appropriate in that instance. *Neiss,* 135 Or App at 229; *Bixler,* 49 Or App at 199 n 4.

■    The term "implied contract" can refer either to a contract implied-in-fact or to one implied-in-law. *See Jaqua v. Nike, Inc.*, 125 Or App 294, 297-98, 865 P2d 442 (1993). The two concepts differ substantially, and the failure to distinguish them has sometimes led to confusion. *See* Arthur Linton Corbin, 1 *Corbin on Contracts* § 19, 44 (1963). An implied-in-fact contract is no different in legal effect from an express contract. *Restatement (Second) of Contracts* § 4, comment a (1979). The only difference between them is the means by which the parties manifest their agreement. In an express contract, the parties manifest their agreement by their words, whether written or spoken. *Id.* In an implied-in-fact contract, the parties' agreement is inferred, in whole or in part, from their conduct. *Id.* Other than questions of proof,[6] the two types of contracts have the same legal effect. In both an express contract and an implied-in-fact contract, the plaintiff is ordinarily entitled to recover benefit of the bargain damages. *See Sullivan v. Oregon Landmark-One, Ltd.*, 122 Or App 1, 856 P2d 1043 (1993) (express contracts).

The term implied contract has also been used to refer to contracts that are implied-in-law or quasi-contracts. "A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent * * *." 1 *Corbin on Contracts* § 19 at 46. The category includes a variety of types of contractual obligations that are implied to prevent injustice, and the remedy for an implied-in-law contract may be less than the benefit of the bargain damages ordinarily available for breach of an express or implied-in-fact contract. *Id.* at 49-50. As noted above, defendants' argument assumes that plaintiff intended to state a claim for breach of an implied-in-law or quasi-contract rather than a contract implied-in-fact. It also assumes that the theory of promissory estoppel that we recognized in *Neiss* is a form of an implied-in-law contract. With that background in mind, we turn to defendants' argument.

_____

[6] "[A]n implied contract can arise only where the natural and just interpretation of the parties warrants such a conclusion." *Owen v. Bradley*, 231 Or 94, 103, 371 P2d 966 (1962). Frequently, implied-in-fact contracts arise because an accepted course of conduct would permit a reasonable juror to find that the parties understood that their acts were sufficient to manifest an agreement. *See Restatement (Second) of Contracts* § 4, comment a, illustrations 1 & 2 (1979).

The difficulty with defendants' argument is the assumption that underlies it. Plaintiff's trial memorandum made clear that she intended to state a claim for an implied-in-fact contract, not one implied-in-law. Plaintiff's trial memorandum stated:

> "As the court is aware, an implied contract can be proven by the conduct of the parties. In this particular case, the evidence will be clear that the conduct of both parties up until the construction of [defendants'] home indicated the existence of this contractual agreement between the parties that [plaintiff] would support their variance and they would not block her view."

Even if the evidence could give rise to two different legal theories, plaintiff may choose which one to pursue. In this case, she clearly was proceeding on the theory that the parties' conduct gave rise to an implied-in-fact contract.

■ Defendants do not argue that there was no evidence from which a reasonable juror could find that an implied contract was formed.[7] Rather, they focus solely on the absence of any evidence of damages. If, however, the jury found that the parties formed an implied-in-fact contract not to block plaintiff's view and that defendants breached that contract, then plaintiff was entitled to the benefit of her bargain. Because plaintiff introduced evidence of those damages, the trial court correctly denied defendants' motion for a directed verdict on plaintiff's implied contract claim.[8]

■ We turn to plaintiff's cross-appeal. Plaintiff argues that the trial court erred in granting defendants' motion for judgment notwithstanding the verdict on her fraud claim. Defendants respond, among other things, that there was no evidence from which the jury reasonably could determine the damages plaintiff suffered as a result of their fraud. On that

---

[7] As we understand it, plaintiff's theory of contract formation runs as follows: In light of plaintiff's repeated statement that she would do anything for anybody who was not going to block her view, the jury reasonably could find that her offer to send a letter supporting defendants' variance request was implicitly conditioned on defendants' promising not to block her view. When defendants sent her a draft letter, that act manifested their acceptance of her offer, including the implicit condition that she placed on it.

[8] We have considered the other rulings that defendants have assigned as error on appeal and affirm them without discussion.

point, "[i]t is well established in this state that, in an action for fraud, plaintiff's recovery is limited to that measured by the 'out-of-pocket' rule unless the actionable misrepresentation was a warranty of value, in which case plaintiff could recover under the 'benefit-of-the-bargain' rule." *Galego v. Knudsen*, 281 Or 43, 51, 573 P2d 313, *modified on other grounds* 282 Or 155, 578 P2d 769 (1978). Because this case does not involve a warranty of value, plaintiff is entitled to her out-of-pocket losses: She is entitled to the difference between the value of her home if defendants had built without the variance and its value with the house defendants built with a variance.

■    As noted above, the evidence showed that even if defendants had not gotten a variance, they still could have built a home that would have partially blocked plaintiff's view. Although the evidence permitted the jury to find that defendants' misrepresentations resulted in an additional, incremental loss of plaintiff's view, plaintiff did not introduce any evidence of the economic damages she suffered as a result of that incremental loss. Nor was there any evidence from which the jury reasonably could have made that determination. *See Cont. Plants v. Measured Mkt.*, 274 Or 621, 627, 547 P2d 1368 (1976). The trial court correctly concluded that there was no evidence of the damages caused by defendants' misrepresentations.

The remaining question is whether plaintiff was entitled to $10,000 in emotional distress damages for defendants' fraud. We have recognized that there are four categories of cases in which a plaintiff may recover damages for emotional distress in the absence of physical injury:

" '(1) certain intentional torts, including trespass to land, intentional interference with contractual relations, conversion, racial discrimination; (2) private nuisance; (3) invasion of privacy; and (4) miscellaneous cases, for example unlawful disinterment of spouse's remains, infringement of right to child custody resulting from attorney's failure to deliver client's passport into 'escrow' to prevent client from taking child out of the country.' "

*Collver v. Salem Insurance Agency, Inc.*, 132 Or App 52, 64, 887 P2d 836 (1994), *rev den* 320 Or 598 (1995) (quoting *Meyer*

*v. 4-D Insulation Co., Inc.*, 60 Or App 70, 652 P2d 852 (1982)). Plaintiff does not argue that fraud is one of the intentional torts in the first category of cases for which emotional distress damages may be recovered. Rather, she claims that this case falls within the second category of private nuisance. Analogizing this case to *Edwards v. Talent Irrigation District*, 280 Or 307, 570 P2d 1169 (1977), and *Macca v. Gen. Telephone Co. of N.W.*, 262 Or 414, 495 P2d 1193 (1972), she argues that defendants' obstruction of her view interfered with her enjoyment and use of her home.[9]

Plaintiff never explains why defendants' construction of their home in a way that the city specifically authorized constitutes a nuisance. *Cf. Hay v. Dept. of Transportation*, 301 Or 129, 135-36, 719 P2d 860 (1986) (no nuisance where state rule specifically authorized intrusion on the plaintiff's land); *accord* W. Page Keeton, *Prosser and Keeton on the Law of Torts*, § 88B at 633 (5th ed 1984). We need not decide, however, whether defendants' actions could constitute a nuisance because plaintiff's claim for emotional distress damages fails on a more fundamental ground.

According to plaintiff's testimony, she was distressed by the fact that defendants blocked her view at all. Under plaintiff's fraud claim, however, defendants are only responsible for plaintiff's emotional distress that resulted from the additional loss of view that their fraud caused. *See Galego*, 281 Or at 51. Plaintiff offered no evidence that would permit the jury to determine those damages. Even if plaintiff would otherwise be able to recover emotional distress damages, a point on which we express no opinion, there was no evidence from which the jury reasonably could determine the emotional distress damages that defendants' fraud caused. The trial court correctly granted defendants' motion for judgment notwithstanding the verdict on plaintiff's fraud claim.

Affirmed on appeal and on cross-appeal.

---

[9] The fact that plaintiff did not specifically allege a claim for nuisance does not disqualify her from seeking emotional distress damages as long as she can establish that defendants' acts in fact constituted a nuisance. *See Edwards*, 280 Or at 309-10 n 2.