Argued and submitted May 13, awards of attorney fees pursuant to ORS 20.105 reversed and remanded; awards of enhanced prevailing party fees pursuant to ORS 20.190(3) vacated and remanded; otherwise affirmed December 9, 2009

Michael MORASCH
and Denise Downey,
*Plaintiffs-Appellants,*

*v.*

Greg HOOD,
an individual;
Barbara Hood,
an individual;
Thomas J. Hood,
an individual;
Hood Custom Homes, LLC,
an Oregon limited liability company;
F. A. Lesick,
an individual;
and J. L. Thompson,
an individual,
*Defendants-Respondents,*

*and*

Alexander BONDARCHUCK,
an individual;
and Tatyana Bondarchuck,
an individual,
*Defendants.*

Multnomah County Circuit Court
051010891; A134436

222 P3d 1125

James N. Westwood argued the cause for appellants. With him on the briefs were Stoel Rives LLP, and Matthew A. Wand and Wand Maddoux LLC.

Thomas W. Brown argued the cause for respondents Greg Hood, Hood Custom Homes, LLC, F. A. Lesick, and J. L. Thompson. With him on the brief were Julie A. Smith and Cosgrave Vergeer Kester LLP.

Mark M. McCulloch argued the cause for respondents Barbara Hood and Thomas Hood. With him on the brief were Keith Shepherd, Corey Tolliver, and Powers, McCulloch & Bennett, LLP.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

This case arises out of a sale of real property to plaintiffs by defendants Thomas Hood and Barbara Hood (the Hoods). Plaintiffs brought suit against the Hoods along with their son, Greg Hood (Greg), his construction company, Hood Custom Homes, LLC (HCH), and several other defendants. In their complaint, among other things, plaintiffs alleged claims for an express or implied easement benefitting their property, breach of warranty, fraud, and conspiracy to commit fraud. The trial court granted summary judgment in favor of defendants on plaintiffs' claims relating to breach of warranty and seeking to establish an express easement. In addition, the court granted motions for directed verdict on plaintiffs' remaining easement-related claims. After the jury returned a verdict finding in plaintiffs' favor on the fraud and conspiracy claims, the trial court granted judgments notwithstanding the verdict in favor of defendants. Finally, the trial court permitted defendants to recover their attorney fees, as well as enhanced prevailing party fees. Plaintiffs appeal and set forth eight assignments of error regarding those rulings. We reject without discussion all of plaintiffs' assignments of error, with the exception of those relating to the fraud and conspiracy claims and attorney fees.[1] On those limited issues, we affirm the judgments notwithstanding the verdict in favor of defendants on the fraud and conspiracy claims, but reverse and remand as to the trial court's award of attorney fees and vacate and remand the award of enhanced prevailing party fees.

We begin by recounting the facts relevant to plaintiffs' fraud claim. Because this case relates to defendants' motions for judgment notwithstanding the verdict, we state the relevant facts in the light most favorable to plaintiffs. *Staley v. Taylor*, 165 Or App 256, 258, 994 P2d 1220 (2000).

---

[1] Specifically, we do not discuss plaintiffs' assignments of error one through five. The assignments of error addressed herein are plaintiffs' sixth and seventh assignments of error, relating to the trial court's grant of judgments notwithstanding the verdict on the fraud and conspiracy claims, along with the eighth assignment of error, relating to the attorney fee and enhanced prevailing party fee awards.

Plaintiffs purchased a piece of residential real property from the Hoods. The Hoods also owned an area of undeveloped property ("the west lot") that bordered the property purchased by plaintiffs. Defendants planned to transfer the west lot to their son, Greg, for development and, before completion of the sale to plaintiffs, had begun the process to partition the west lot. Before closing, plaintiffs expressed their concern to the Hoods about future development of the west lot. Although they knew that the west lot was not available for them to purchase, plaintiffs were not specifically informed of the development plans. The Hoods completed the sale of the west lot to defendant HCH, a company owned and operated by Greg, several weeks after plaintiffs closed on their property. Eventually, HCH successfully partitioned the west lot into several properties and built and sold a house on one of the resulting lots.

In addition to inquiring about the west lot, plaintiffs asked about the drainage system for a swimming pool that existed on the property. Defendant Thomas Hood's response to their query led plaintiffs to believe that the swimming pool drained into the sewer system, although it did not. Instead it drained into a dry well on the property. Plaintiffs also asked whether there were oil tanks on the property. As to the presence of an oil tank on the property, the Hoods represented that they "paid to have oil heat converted to gas [heat]" decades before and had "no information." In fact, there was a working oil tank still on the property at the time of the sale that had been in use as late as 1997, during the time that the Hoods had lived on the property.

Plaintiffs testified at trial that they would not have purchased the property if they had known of the plans for development. They presented evidence that it would cost $23,000 to install trees along the border between their property and the west lot in order to remedy their loss of privacy that resulted from the development of the west lot. Relating to the swimming pool, plaintiffs' witness testified regarding the cost to connect the pool drainage to the sewer system. In addition, plaintiffs testified that, if they had known about the oil tank, they would have refused to close the sale until defendants paid to have it removed from the property. Plaintiffs presented evidence that the cost to remove the heating oil

tank and the pool house under which it was located and then to rebuild the pool house would be $41,950. Plaintiffs did not present other evidence of damages stemming from defendants' alleged fraudulent conduct. As part of its instructions to the jury, the trial court stated that, as to damages, "[t]he measure of damages for fraud is the difference between the purchase price of the property and the fair market value of the property on the same date."

The jury returned a verdict in favor of plaintiffs. On special verdict forms, the jury found that plaintiffs had proved, by clear and convincing evidence, that the Hoods committed fraud, that Greg and HCH had conspired with the Hoods to defraud plaintiffs, and that plaintiffs proved their resulting damages against defendants by a preponderance of the evidence. The jury found that the Hoods' fraud caused plaintiffs damages in the amount of $41,950. It also awarded plaintiffs punitive damages against the Hoods in the amount of $29,400. As to Greg and HCH, the jury found plaintiffs were damaged in the amount of $23,000.

Thereafter, defendants filed motions for judgment notwithstanding the verdict. In support, they contended, in part, that plaintiffs had not presented evidence at trial sufficient to support the jury's damages findings. Specifically, defendants contended that damages resulting from any fraud would be the difference between the price plaintiffs paid for the property and the fair market value. However, according to defendants, plaintiffs

"simply did not have any evidence to show the comparison. They * * * attempted to do it on this cost basis. They have not had any comparison between the purchase price, which we know, and the fair market value. There is no evidence of fair market value.

"* * * * *

"If I have one point to make, and I think we have a number of valid points that support our judgment notwithstanding the verdict, the point that pertains to everything in this case with respect to the fraud is this damages matter. I would argue that that clear law, the out-of-pocket rule applies for all claims of damages, and in none of the claims of damages, none of the three claims of damages, have the

Plaintiffs brought forth any evidence to allow the jury or this Court to make a comparison between the purchase price and the fair market value."

Plaintiffs, in contrast, asserted that they were entitled to "benefit of the bargain" damages. They contended that, "[i]n this case[,] it was falsely represented as things not being there, and so [our damages are] the cost of removing them." Plaintiffs further contended that the evidence of the cost to remove the oil tank supported a finding "that the fair market value of the house was [the purchase price] less the cost of removing the tank. There was no evidence to say that [the price plaintiffs paid for the house] was an appropriate fair market value or that there were any other people out there willing to pay $615,000 [the price plaintiffs paid for the house] for a house that had an oil tank on it * * *."

In response to the parties' arguments, the court asked plaintiffs' counsel, "In this case, who said the property was $41,000 less in value than [$]615[,000]?" Counsel replied that "Mr. Morasch did when he said, 'I would not have bought it. I would not have paid for that—I would not have paid that price.' " The court then made its ruling:

"[T]hat's not sufficient.

"[Plaintiffs' counsel], the problem here, for your side, is that—I disagree completely with your reading of the law and with your reading of the evidence. I denied the motions for directed verdict for the reasons many judges do in the middle of trial, because we assume that the jury is going to assess the evidence and find that there is no evidence there to support the plaintiffs' case, and we assume the jury's going to follow the instructions.

"And we assume, therefore, that this jury would have brought in a verdict for the defense. They didn't do that. They should have. And I'm obligated to grant the motions for * * * judgment notwithstanding the verdict for all of the defendants, for the reason that there was no evidence to support the jury verdict, and they ignored the instructions."

In addition to granting judgment to defendants, the trial court also allowed defendants to recover attorney fees, as well as enhanced prevailing party fees from plaintiffs.

We turn first to plaintiffs' contention that the trial court erred in granting defendants' motion for judgment notwithstanding the verdict on the fraud claim. On appeal following a judgment notwithstanding the verdict, we must reinstate the jury's verdict unless there was no evidence to support it. *Bennett v. Farmers Ins. Co.*, 332 Or 138, 147-48, 26 P3d 785 (2001). To prevail on a claim for fraud, a plaintiff must present evidence on each of the following elements:

> " '(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.' "

*U.S. National Bank v. Fought*, 291 Or 201, 220-21, 630 P2d 337 (1981) (quoting *Conzelmann v. N. W. P. & D. Prod. Co.*, 190 Or 332, 350, 225 P2d 757 (1950)); *see also Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 405, 737 P2d 595 (1987). Because it is dispositive, we begin by addressing whether plaintiffs presented evidence of damages sufficient to support their fraud claim.

Plaintiffs contend that the trial court was wrong in its conclusion that their "expense of making the property conform to the condition it would have had, but for Defendants' fraudulent statements and concealments, could not as a matter of law establish market value." Defendants respond that plaintiffs did not present evidence of the fair market value of the property.

"The general rule of damages in fraud is that a plaintiff is entitled to 'such damages as naturally and proximately resulted from the fraud.' " *McLean v. Charles Ellis Realty, Inc.*, 189 Or App 417, 427, 76 P3d 661 (2003), *rev den*, 337 Or 34 (2004) (quoting *Selman v. Shirley*, 161 Or 582, 609, 85 P2d 384, 91 P2d 312 (1939)); *see also Knepper v. Brown*, 345 Or 320, 329-32, 195 P3d 383 (2008) (proximate injury in the context of fraud refers to damages that might reasonably be expected to result from a plaintiff's reliance on a defendant's misrepresentation). The parties in this case disagree as to the proper measure of damages to be applied. Plaintiffs assert

that they are entitled to receive "benefit-of-the-bargain" damages. Those are "the difference between the actual value of the property and its value as represented." *McLean*, 189 Or App at 428. Defendants, in contrast, contend that only "out-of-pocket" damages are proper in this case. That measure is "based on the difference between the purchase price of the property and the fair market value of the property on the date of sale." *Id.* Defendants contend that, based on the proper measure of damages, there was no evidence from which a reasonable jury could determine what, if any, damages plaintiffs suffered as a result of the alleged misrepresentations.

■■ "It is well established in this state that, in an action for fraud, [a] plaintiff's recovery is limited to that measured by the 'out-of-pocket' rule unless the actionable misrepresentation was a warranty of value, in which case [the] plaintiff could recover under the 'benefit-of-the-bargain' rule." *Galego v. Knudsen*, 281 Or 43, 51, 573 P2d 313, *modified on other grounds*, 282 Or 155, 578 P2d 769 (1978) (citing *Selman*, 161 Or at 609); *see also Sorensen et ux v. Gardner et ux*, 215 Or 255, 265, 334 P2d 471 (1959) ("[T]he theory behind the benefit of the bargain rule is that if fraudulent representations constitute a warranty also, recovery may be had on that basis."); *McLean*, 189 Or App at 428 (benefit-of-bargain measure of damages applies in "the context of actionable fraud involving a warranty of value by the seller of property"; in a case not involving such a warranty of value that measure of damages is not applicable); *Staley*, 165 Or App at 264 (reiterating that rule and concluding that, in a case not involving a warranty of value, the measure of a plaintiff's damages is out-of-pocket losses). There is no dispute that this case does not involve a warranty of value. Under those circumstances, plaintiffs' damages are limited to their out-of-pocket loss—the difference between the price they paid for the property and its fair market value at the time of the sale. If the fair market value is not less than the sales price then, under the out-of-pocket rule, plaintiffs suffered no damage. *See Sorensen et ux*, 215 Or at 266-67 ("For all that appears, the property was worth every cent [the plaintiffs] paid, and if that be the case they suffered no loss and have no cause of action against the defendants."). "The burden, of course, is on

the plaintiff to establish the purchase price and the fair market value of the property." *Galego*, 281 Or at 51.

There is no question in this case that the evidence at trial established that plaintiffs purchased the property in question for $615,000. Plaintiff Morasch also testified that he would not have paid that price for the property if he had known of the actual condition of the property at the time of sale. However, as noted, the only evidence that plaintiffs presented relating to their damages resulting from the misrepresentations was of the cost to remove the oil tank (and, at the same time, remove and rebuild the pool house under which it was located), plant trees as a privacy barrier, and connect the swimming pool to the sewer system. They contend that that evidence is sufficient to establish the difference between the price for which they purchased the property and the fair market value. Thus, we must determine whether evidence of the cost to remediate differences between the property as represented and the property as delivered can, as a matter of law, be sufficient to carry plaintiffs' burden of proving the fair market value of the property as part of the application of the out-of-pocket rule. We conclude that it is not.

"Fair market value is an *objective concept*, representing the price that a hypothetical willing buyer would pay a hypothetical willing seller" for the property. *Jim Bernard for Clack. Co. Comm. v. Elections Div.*, 229 Or App 419, 425, 211 P3d 321 (2009) (emphasis added). Thus, to establish the fair market value of property in a fraud case, a plaintiff cannot merely present evidence relating to what he or she would have paid for the property if its true condition were known. Evidence of the actual value of the property in such condition is essential to establish damages. Furthermore, to award damages to a plaintiff based on the cost of making such repairs or alterations as are necessary to bring property from its actual condition at the time of a sale to conformity with the condition as represented would be an application of the benefit-of-the-bargain rule rather than the out-of-pocket rule. *Sorensen et ux*, 215 Or at 264. Such evidence is insufficient to demonstrate the price that a hypothetical willing buyer would have been willing to pay for the property, as is required to establish damages pursuant to the out-of-pocket

rule. *See id.* at 266-67 (jury verdict could not stand where out-of-pocket rule was applicable but jury had been instructed to consider such repairs and alterations necessary to make property as represented and, in any event, there was "no evidence which would have enabled them to apply the right rule"); *see also Staley,* 165 Or App at 264 (trial court did not err in granting judgment notwithstanding verdict on fraud claim where plaintiff did not introduce evidence from which jury reasonably could have properly determined the economic damages suffered as a result of defendants' misrepresentations); *accord Lobe Enterprises v. Dotsen,* 360 NW2d 371, 373 (Minn App 1985) (plaintiff could not establish damages under the out-of-pocket rule by merely subtracting the cost of repairs from the purchase price of the property). As noted, in this case, plaintiffs' only evidence of damages related to the cost of altering the property to bring it into conformity with defendants' representations. That evidence was insufficient, as a matter of law, to establish damages pursuant to the applicable rule. Accordingly, the trial court did not err in granting defendants' motion for judgment notwithstanding the verdict on plaintiffs' claim for fraud.

■■ ■■ We next consider the trial court's decision to grant judgment notwithstanding the verdict on the allegations of a civil conspiracy. A civil conspiracy consists of (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a result of the overt act or acts. *Osborne v. Fadden,* 225 Or App 431, 437, 201 P3d 278, *rev den,* 346 Or 213 (2009). However, civil conspiracy is not, itself, a separate tort for which damages may be recovered; rather, it is a "way[ ] in which a person may become jointly liable for another's tortious conduct." *Granewich v. Harding,* 329 Or 47, 53, 985 P2d 788 (1999); *see also Osborne,* 225 Or App at 437 (Conspiracy is a "theory of mutual agency under which a conspirator becomes jointly liable for the tortious conduct of his or her coconspirators."). Here, plaintiffs' civil conspiracy claim was based on their allegations of fraud by defendants and thus, any damages for the conspiracy would be based wholly on damages as a result of the underlying fraud. Given the foregoing understanding of civil conspiracy and our conclusion that the trial court properly disposed of

plaintiffs' fraud claim in favor of defendants due to plaintiffs' failure to present proper evidence of damages, it follows that the court also properly granted judgment notwithstanding the verdict in favor of defendants relating to the conspiracy allegations.

■ We turn to plaintiffs' assertion that the trial court erred in awarding defendants their attorney fees.[2] Specifically, plaintiffs contend that, at least as to the claims on which they obtained a favorable jury verdict, they had an objectively reasonable basis for assessing those claims, and, therefore, the trial court erred in awarding attorney fees.[3]

■ ORS 20.105(1) provides:

"In any civil action, suit or other proceeding in a circuit court * * * the court shall award reasonable attorney fees to a party against whom a claim * * * is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim, * * * upon a finding by the court * * * that there was no objectively reasonable basis for asserting the claim * * *."

"Under ORS 20.105(1), in determining whether a party had an objectively reasonable basis for asserting a particular claim, the primary issue is whether there is evidence in the

---

[2] Plaintiffs assert, in part, that the attorney fee award must be reversed if we reverse all or part of the trial court's judgment on the merits. We do not address the parties' arguments on that issue because we affirm the judgment on the merits.

[3] To the extent that plaintiffs intend to assert that their remaining claims had an objectively reasonable basis, those arguments as to the propriety of the trial court's award of fees on those claims are not sufficiently developed to warrant discussion. Plaintiffs specifically argue as follows:

"[E]ven if this Court were to reverse on none of the assigned errors of the trial court, it can readily determine that the trial court lost its objectivity and exceeded its discretion. * * * With all respect for the trial court, Plaintiffs submit that this brief has established throughout the sound basis for the legal theories presented, and that the trial court's difficulty in grasping them was not from lack of cogency or objective reasonableness on Plaintiffs' part. At the very least, Plaintiffs defeated at least one summary judgment motion below. A jury found two of their claims were meritorious, one of them with punitive damages. The judgment for attorney fees should be reversed."

(Underline in original.) Plaintiffs do not, in their assignment of error on attorney fees, make specific arguments regarding their claims and how they were founded in fact and law. However, because they identify the jury's verdict as support for their fraud and conspiracy allegations and because plaintiffs' arguments on the merits of those claims warranted discussion, we address the attorney fees as to those claims.

record to support the claim—that is, whether the party's claim is entirely devoid of legal or factual support at the time it was made." *Lenn v. Bottem,* 221 Or App 241, 248, 190 P3d 399, *rev den,* 345 Or 503 (2008) (internal quotation marks and citations omitted). The fact that a claim is ultimately unsuccessful does not necessarily mean that the party's position was objectively unreasonable. *Mattiza v. Foster,* 311 Or 1, 8, 803 P2d 723 (1990) (discussing an earlier version of ORS 20.105(1) that referred to "meritless" claims). "A position is objectively unreasonable 'if it is not supported by the law as applied to the facts.' " *Lenn,* 221 Or App at 248 (quoting *Mattiza,* 311 Or at 8 n 10) (emphasis omitted). We review the trial court's determination that plaintiffs' claims lacked an objectively reasonable basis for errors of law. *Lenn,* 221 Or App at 248; *Secor Investments, LLC v. Anderegg,* 188 Or App 154, 175, 71 P3d 538, *rev den,* 336 Or 146 (2003).

With respect to plaintiffs' fraud claim, as noted above, the facts that constitute actionable misrepresentation are a false material representation, the speaker's knowledge of the falsity and intent that it be acted on, the hearer's ignorance of the representations' falsity and reasonable reliance thereon, and resulting injury. In this case, there was some evidence presented to establish the elements of fraud at least as to certain representations made by defendants to plaintiffs. Based on the verdict in plaintiffs' favor, it is clear that the jury believed the evidence.

Specifically, as to the oil tank, plaintiffs presented evidence that they had particularly asked about the presence of an underground oil tank on the property and, in response, the Hoods represented that they had no information as to that issue as the property had been converted from oil heat to gas heat several decades before. Furthermore, plaintiffs' presented testimony that the oil tank in question had been serviced less than 10 years before the sale, that they relied on the Hoods representations, and that, after the sale was completed, they learned of the presence of the oil tank on the property and that it would be costly to remove. From that evidence, a reasonable juror could conclude that plaintiffs had established the necessary elements of fraud. Although, as discussed above, the evidence relating to damages was not legally sufficient to sustain the claim for fraud, we cannot

conclude, especially in light of the jury verdict, that plaintiffs' claim was without an objectively reasonable basis.

 The alleged conspiracy that was the basis of plaintiffs' claim for damages against Greg and HCH related to the alleged fraudulent failure to disclose the development plans for the west lot. Evidence was presented at trial that plaintiffs had asked the Hoods about whether there were development plans for the west lot and emphasized the importance that issue had to them. Further, plaintiffs attempted to purchase the west lot, which the Hoods had told them was for sale, to prevent such development. However, before plaintiffs' purchase of the property, the Hoods planned to sell the west lot to Greg and HCH for development and they had begun the process to partition the west lot into multiple pieces of property for development. There was testimony at trial that plaintiffs would not have closed on the purchase of the property if they had been told of the development plans and that they were convinced by Thomas Hood that, once the house sale was complete, they would be able to purchase the west lot as well. Again, the evidence as to damages was insufficient under the legal standards applicable to this case. However, that deficiency is not such that it renders the claim wholly unsupported. Thus, we must turn to the question of whether there was any basis for holding Greg and HCH liable to plaintiffs as co-conspirators in the concealment.

There was evidence at trial that, before plaintiffs completed the purchase of the property, Thomas Hood informed Greg that plaintiffs were concerned about the possible development of the west lot by Greg and HCH and wanted to purchase the west lot. Greg, in response, told Thomas Hood that he already had done preliminary work relating to the development. He testified at trial that he waited longer to close on the purchase of the west lot than he would normally have done. There was also evidence that the sale of the west lot to HCH was completed very shortly after plaintiffs closed on the purchase of the property. That evidence could support the jury's inference that Greg and HCH agreed with the Hoods to conceal the development plans for the west lot from plaintiffs in order to induce them to close on the property and that the closing on the west lot was delayed for that purpose. Accordingly, plaintiffs were not without a

basis in fact or law in seeking recovery from Greg and HCH based on conspiracy liability for fraud.

Because we conclude that plaintiffs had an objectively reasonable basis for asserting their claims relating to fraud and civil conspiracy, the trial court erred in awarding defendants attorney fees relating to those claims. Accordingly, we reverse and remand the attorney fee awards.

Finally, turning to the trial court's awards of enhanced prevailing party fees, in awarding such fees, one factor that the trial court must consider pursuant to ORS 20.190(3)(b) is "[t]he objective reasonableness of the claims and defenses asserted by the parties." Accordingly, we vacate and remand the award of enhanced prevailing party fees so that the trial court may exercise its discretion in light of our conclusion that some of plaintiffs' claims were objectively reasonable. *See Mantia v. Hanson,* 190 Or App 412, 431, 79 P3d 404 (2003).

Awards of attorney fees pursuant to ORS 20.105 reversed and remanded; awards of enhanced prevailing party fees pursuant to ORS 20.190(3) vacated and remanded; otherwise affirmed.