NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

ROBERT O. DAVIS III, )
)  Supreme Court No. S-15962
Appellant, )
)  Superior Court No. 3AN-14-04374 CI
v. )
)  MEMORANDUM OPINION
KING CRAIG TRUST and CRAIG )  AND JUDGMENT*
KING, d/b/a ROSEWOOD )
CONDOMINIUMS, )  No. 1628 – May 17, 2017
)
Appellees. )
)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Robert O. Davis, III, pro se, Anchorage, Appellant. Michael A. Rose, Law Office of Ralph Ertz, Anchorage, for Appellees.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.    INTRODUCTION

A commercial tenant sued his landlord, alleging that city ordinances required the landlord to provide him overnight parking spaces and that the landlord had retaliated against him for complaining about the issue. The landlord responded by filing a forcible entry and detainer action based on the tenant's failure to pay rent. The cases

---

\*    Entered under Alaska Appellate Rule 214.

were consolidated. After hearing testimony from both parties the superior court awarded possession to the landlord, then later granted summary judgment to the landlord on the tenant's claims for damages, deciding that the city ordinances did not require the parking spaces the tenant claimed he was entitled to.

The tenant appeals the grant of summary judgment. Because we agree with the superior court's interpretation of the city ordinances, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Craig King[1] owns several units in a "multi-tenant, multi-use" commercial building in Anchorage. Robert Davis, the owner of an automotive repair business, rented two of King's units on a month-to-month basis beginning in August 2012. The parties' written lease expressly provided that "[t]here is no outside storage of any kind and 24-hour parking or overnight parking is not allowed."[2] However, King allowed Davis to use eight nearby parking spaces during the day.

In 2013 King and Davis had a dispute about parking. According to Davis's later complaint, King began towing vehicles that were left outside the repair shop after hours. Davis also alleged that when he approached King about the towing, King responded by threatening him, raising his rent, and "towing more vehicles."

---

[1] Whether the property is owned by the King Craig Trust, King individually, or both is not clear from the pleadings and not important to our decision. For efficiency's sake we refer to King individually as the owner.

[2] There is no copy of the lease in the record on appeal, but the quoted excerpt from it is included as a finding of fact in the trial court's order for possession. Neither party has challenged the finding on appeal; we therefore assume that the lease is accurately quoted.

**B.     Proceedings**

Davis filed a complaint against King in superior court in January 2014.  He relied on a provision of the Anchorage Municipal Code that set the "Minimum Off-Street Parking Requirements" for "[r]epairing garages" at "[f]our parking spaces for each bay[,] provided that all vehicles in the custody of the operator of the business for the purpose of service, repair or storage shall be stored on the premises or on a separate off-street parking lot or building."[3]   Davis alleged that his lease with King, particularly its prohibition of "outside storage" and "24-hour parking," violated this provision, and he sought an injunction "restraining [King] from interfering with customer vehicle parking, rights of use, occupancy and quiet enjoyment of the commercial rental property."  The complaint also asked for "[p]rotection from eviction for the future non-payment of rent."

King answered the complaint and served Davis with a notice to quit the property.  The notice said that Davis owed $2,600 in overdue rent and warned that if he did not pay it or vacate the building within a week, by February 8, 2014, King would file a lawsuit to evict him.  On February 13 King filed a forcible entry and detainer (FED) action in district court.  On Davis's motion the district court transferred the FED action to the superior court, where it was consolidated with Davis's pending suit against King for damages and injunctive relief.

The superior court first decided the FED matter. It heard testimony from both Davis and King and issued a written decision in King's favor.  It awarded possession to King because Davis admitted that he had not paid rent, testifying that he

---

[3]     Anchorage Municipal Code (AMC) 21.45.080(J) (2010) (current version at AMC 21.07.090(E) tbl. 21.07-4 (2016)).  The provision on which Davis relied expired December 31, 2014, and was replaced with nearly identical language at AMC 21.07.090(E), Table 21.07-4.  We rely on the version in effect at the time of the parties' dispute, though the difference in language is inconsequential for our purposes.

withheld the rent because the lease violated the Municipal Code. The court denied Davis a preliminary injunction on the ground that he failed to show probable success on the merits.

The following year the court granted summary judgment in favor of King on all of Davis's remaining claims. The court reasoned that "nothing in the [Municipal] Code requires 24 hour [parking] or overnight access" and that "Davis [could not] hold [King] responsible for providing the 24-hour parking he requires to operate his business."

Davis appeals. He does not challenge the superior court's decision on possession but argues that the court erred in granting summary judgment on his damages claims against King.

## III. STANDARD OF REVIEW

"We review grants of summary judgment de novo."[4]

## IV. DISCUSSION

### A. Davis's Lease Did Not Violate The Anchorage Municipal Code.

Davis's principal argument is that his lease violated the Anchorage Municipal Code. The Code requires that a business operating as an automotive repair shop have four off-street parking spaces for each service bay.[5] Davis's leased premises had two service bays; under the Code, therefore, King was required to provide him with eight off-street parking spaces. Davis does not argue that he was not given the required number of spaces, but rather that he should have been allowed to use them for overnight and long-term parking; since the lease expressly denied him those uses, he contends, the

---

[4] *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014) (citing *Hurn v. Greenway*, 293 P.3d 480, 483 (Alaska 2013)).

[5] AMC 21.45.080(J) (current version at AMC 21.07.090(E), Table 21.07-4).

lease was unlawful. He explains that the auto repair business depends on available long-term vehicle storage because major repairs take time.[6]

But as the superior court observed, "Davis cannot hold [King] responsible for providing the 24-hour parking he requires to operate his business. Rather, Mr. Davis is responsible for finding a property that will meet his needs, within the constraints of the law." While the law requires that the business have off-street parking, it does not require that the four spaces per bay be available to the tenant for overnight and long-term storage. Indeed, though the ordinance is not a model of clarity, it appears to say that those spaces should *not* be used in such a way.[7] We assume that the purpose of the off-street parking requirement is to make spaces available for a business's day-to-day visitors, thus reducing congestion in the street.[8] Davis's use of those spaces for long-term storage of vehicles under repair would defeat this purpose. His lease, expressly

---

[6] In response to this argument, King testified that Davis could easily fit two vehicles inside each of his bays. Davis admitted that he could feasibly store up to four cars inside.

[7] AMC 21.45.080(J) requires "[f]our parking spaces for each bay provided that all vehicles in the custody of the operator of the business for the purpose of service, repair or storage shall be stored *on the premises* or *on a separate off-street parking lot or building*." (Emphasis added.)

[8] *See City of Miami Beach v. 100 Lincoln Rd., Inc.*, 214 So. 2d 39, 39-40 (Fla. Dist. App. 1968) ("The authorities seem agreed that the purpose of off-street parking requirements is not to provide every tenant with a parking space at all times but rather to alleviate traffic congestion."); *Wawa Food Mkt. v. Planning Bd.*, 545 A.2d 786, 789 (N.J. Super. App. Div. 1988) (observing that "the legitimate municipal interest in decreasing traffic congestion" is advanced by zoning ordinances requiring off-street parking "since vehicles, which would otherwise park on the streets, are required to park on the proposed site"); *Northtown Realty Co. v. Siegel*, 383 N.Y.S.2d 302, 303 (N.Y. Sup. 1976) ("One of the purposes of offstreet parking specification is to relieve the surface congestion of traffic. Plainly, incoming cars must be put someplace.").

prohibiting "outside storage of any kind[,] . . . 24-hour parking[,] [and] overnight parking," is thus easily harmonized with the Code's requirement of off-street parking and is not illegal.

**B.      The Superior Court Did Not Err By Granting Summary Judgment On Davis's Claims For Damages.**

Davis's complaint included claims for damages under five theories: (1) breach of the covenant of quiet enjoyment; (2) wrongful eviction; (3) intentional interference with prospective economic advantage; (4) intentional interference with contract; and (5) civil conspiracy.[9] The superior court's summary judgment order did not analyze these claims individually but decided that none of them could be maintained because Davis had no right to outside overnight parking and therefore could prove no damages due to interference with or loss of that right. We agree. Because Davis's lease did not violate the Code, Davis could not establish the essential elements of any of his causes of action.

Breach of the covenant of quiet enjoyment and wrongful eviction both require "substantial" interference with a person's property rights,[10] but as explained

---

[9]      Whether "civil conspiracy" actually constitutes a separate wrong is not something we need to address today. *See Morasch v. Hood*, 222 P.3d 1125, 1132 (Or. App. 2009) (stating that "civil conspiracy is not, itself, a separate tort for which damages may be recovered; rather, it is a 'way[] in which a person may become jointly liable for another's tortious conduct.' " (alteration in original) (quoting *Granewich v. Harding*, 985 P.2d 788, 792 (Or. 1999))). Davis also alleged as a separate cause of action that King "[r]ender[ed] an [a]ctual [e]viction." It is unclear how this claim differs from wrongful eviction, and we do not consider it separately.

[10]      *Berrey v. Jeffcoat*, 785 P.2d 20, 23 (Alaska 1990) (quoting W. BURBY, HANDBOOK OF THE LAW OF REAL PROPERTY § 62 (3d ed. 1965)) (discussing breach of the covenant of quiet enjoyment); *Barkett v. Brucato*, 264 P.2d 978, 986 (Cal. Dist. App. 1953) (quoting RESTATEMENT (FIRST) OF TORTS § 822 (AM. LAW. INST. 1934))
(continued...)

above Davis had no right — under the lease or under the Code — to park cars outside his shop overnight. Likewise, Davis cannot establish intentional interference with prospective economic advantage or intentional interference with contract; King did not act wrongfully in denying Davis overnight parking.[11] Nor can Davis establish the necessary elements of civil conspiracy, which include "unlawful" acts by "two or more persons," as he accuses no one besides King of wrongdoing.[12] The superior court did not err in granting summary judgment on Davis's damages claims.

Davis appears to contend that he raised genuine issues of material fact about King's motivations; he argues that King increased his rent and interfered with his business in retaliation for his complaints about parking. He also makes a cursory claim, apparently not raised in the superior court, that King discriminated against him because of his race. These allegations, like those addressed above, presume that Davis's lease violated the Code. For example, he asserts on appeal that King's "conformity" with the Code's parking requirements was determined by the race of the tenant. He argued in the superior court that King's actions in towing cars that were parked overnight, confronting Davis about parking issues, and raising the rent were unlawful retaliation for Davis's

---

[10](...continued)
(discussing wrongful eviction).

[11]     *See Ellis v. City of Valdez*, 686 P.2d 700, 707 (Alaska 1984) ("[A] person who is involved in an economic relationship with another, or who is pursuing reasonable and legitimate prospects of entering such a relationship, is protected from a third person's wrongful conduct which is intended to disrupt the relationship."). To succeed in an action for intentional interference with contract, a plaintiff must show that the defendant "intentionally procured a breach" of a contract "without justification or privilege." *Long v. Newby*, 488 P.2d 719, 722 (Alaska 1971); *see also* RESTATEMENT (SECOND) OF TORTS § 766 (AM. LAW INST. 1979).

[12]     *See Morasch*, 222 P.3d at 1131-32.

assertion that the lease's restrictions on his use of the off-street parking spots violated the Code.

But Davis does not have the rights he claimed to have under the Code. His lease was month-to-month, which allowed for an increase in rent at the end of any one-month term. And he did not provide the superior court with any alternative basis for a discrimination or retaliation claim. He presented no evidence that King retaliated against him because of some kind of protected conduct, status, or activity.[13] We conclude that the superior court did not err by granting summary judgment despite Davis's claims of unlawful retaliation.[14]

## V.   CONCLUSION

We AFFIRM the judgment of the superior court.

---

[13]    *Cf. Helfrich v. Valdez Motel Corp.*, 207 P.3d 552, 560 (Alaska 2009) (holding, in case governed by the Uniform Residential Landlord Tenant Act, that statutory anti-retaliation remedy protects only tenant actions intended to vindicate legal rights protected by the landlord-tenant laws).

[14]    Davis's challenge to the superior court's denial of injunctive relief is moot, as he does not challenge the court's decision granting possession of the property to King. "A claim is moot . . . where a party bringing the action would not be entitled to any relief even if he or she prevailed." *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007) (citing *Maynard v. State Farm Mut. Auto. Ins.*, 902 P.2d 1328, 1329 n.2 (Alaska 1995)). After the grant of possession to King, Davis had no legal right to occupy the premises and no further interest in the adjacent parking.