Argued and submitted December 14, 2007, affirmed July 23, petition for review denied December 24, 2008 (345 Or 503)

Ronald LENN
and Kathleen Lenn,
*Plaintiffs-Appellants,*

*v.*

Dennis BOTTEM
and Julia Bottem,
*Defendants-Respondents.*

Lane County Circuit Court
120509806; A133691

190 P3d 399

George W. Kelly argued the cause and filed the briefs for appellants.

Rohn M. Roberts argued the cause for respondents. With him on the brief was Arnold Gallagher Saydack Percell Roberts & Potter, P.C.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiffs initiated this action to obtain title to a strip of defendants' land by way of adverse possession or boundary by agreement. The trial court rejected their claims and ruled for defendants. Defendants then sought an award of attorney fees under ORS 20.105(1) and an enhanced prevailing party fee under ORS 20.190(3), arguing that there was no objectively reasonable basis for either of plaintiffs' claims, given the existence of certain documents of which plaintiffs were aware that conclusively defeated their claims. The trial court agreed and awarded the attorney fees and an enhanced prevailing party fee of $5,000. Plaintiffs appeal. Their sole contention is that the trial court erred in awarding attorney fees and an enhanced prevailing party fee. We conclude that the trial court correctly determined that there was no objectively reasonable basis for plaintiffs' claims and that, as a result, the court did not err in awarding attorney fees and an enhanced prevailing party fee.

The following facts, unless otherwise noted, are undisputed. Plaintiffs and defendants own adjacent parcels of rural property that were once held as a single parcel by Murry. A roadway crossed the middle of the property from the southeast corner, running in a northwesterly direction. Sometime during his ownership of the property, Murry dug an elongated pond located to the west of the road, roughly in the middle of the parcel, curving from the southwestern corner to the northeast. He also planted some trees in the area immediately south of the pond. It is this area located directly to the south of the pond, that is the subject of dispute in this case, and is depicted in the following not-to-scale diagram:

In the 1970s, Murry partitioned his property into two parcels. The pond was located on the northern parcel, although the actual partition map does not mark the location of the pond in relation to the boundary. In 1977, defendants—Murry's sister and brother-in-law—purchased the northern parcel.

In 1990, plaintiffs purchased the southern parcel. The parcel had been advertised as "bordered by a pond," although nothing in the partition map indicated that the southern parcel actually bordered the pond. During the negotiations for the purchase of the property, Murry insisted that plaintiffs grant defendants a right of first refusal in the event that plaintiffs later sold their parcel and an easement for the roadway across the middle of plaintiffs' parcel as depicted on the partition map. Plaintiffs did not agree with the proposed location of that easement, and the parties agreed that plaintiffs would propose a revised document.

Plaintiffs' revision included the right of first refusal, but the location of the easement was changed. Instead of running across plaintiffs' parcel, the revised easement tracks a segment of the property line between the parcels. The document provided that "the sole purpose of [the easement] is to provide access to [defendants'] pond and pump house and to provide for the periodic loading of cattle." Both parties signed the revised document, and the purchase was completed.

In late December 1994, plaintiffs decided to construct a pond of their own, which would flow into the pond located on defendants' property. They submitted an application for a permit to do so with the state's Water Resources Department. That application included a three-page form, which plaintiffs completed, and several attachments, all of which were stamped as received by the department on January 4, 1995. One of the attachments, "Exhibit B," is a drawing of the pond that plaintiff Kathleen Lenn made by hand showing the location of defendants' pond, the proposed new pond, and the boundary between plaintiffs' and defendants' properties. The drawing clearly shows the location of defendants' pond to the north of the property line, completely on defendants' land. The application materials also included an aerial photograph of the properties in which defendants'

pond is clearly visible. Also visible are survey calls and thick dark lines to delineate the property lines. Those property lines correspond to the property lines designated on the partition map. They also correspond to the property line that was hand-drawn on Exhibit B. In short, the photograph clearly shows that defendants' pond is located completely on defendants' property.

In 1997, an issue arose between the parties about whether plaintiffs could use the disputed property for grazing cattle. Defendants eventually personally delivered a letter granting permission to plaintiff Ronald Lenn to use the property. Lenn later denied ever having received the letter.

In 1998, plaintiffs staked the area where they proposed to locate the new pond and hired a surveyor to survey the area. The surveyor found that the proposed pond encroached onto defendants' property and delivered to Ronald Lenn a copy of his survey to that effect. Lenn later denied ever receiving such a survey.

Sometime after that, the parties disputed the location of the property line in relation to defendants' pond. Plaintiffs asserted that their property actually extended to the southern shore of the pond, including the land directly to the south of the pond's curve where Murry had planted the trees. Defendants asserted that the property line was located where it has always been shown by surveys and partition maps—well to the south of the pond.

In November 2004, defendants hired a surveyor to mark the deed line. The surveyor placed flags along the property line on the south side of the pond. In May 2005, plaintiffs filed this lawsuit against defendants, claiming ownership to the property on their side of the pond all the way up to the pond's edge. They asserted adverse possession and boundary by agreement claims, and also a claim for trespass for defendants' entry onto the disputed property for purposes of the 2004 survey. Defendants answered and counterclaimed to quiet title.

At trial, plaintiffs testified that they honestly believed that the disputed property was their property—and not defendants'—until the 2004 survey. They maintained

that they had always thought that their property line was the edge of defendants' pond and that they owned "waterfront" property.

Defendants contended that plaintiffs could not reasonably maintain such a belief in the face of, among other things, their own 1994 application to construct a second pond, Exhibit B of which plainly located the property line well to the south of defendants' pond. Defendants further noted that plaintiffs' claims were contradicted by the 1997 permission letter and by the 1998 survey. When questioned about Exhibit B to their water permit application, plaintiff Kathleen Lenn testified that she simply "slapped down" the property line and did not intend to approximate the boundary between the parcels. As for the permission letter and the survey, plaintiffs simply denied ever receiving them.

The trial court rejected all of plaintiffs' claims in a written opinion. The court determined that plaintiffs were aware of the true location of the property line from at least 1990, as evidenced by the partition map, as well as Exhibit B to their water permit application, and later surveys. The court entered a judgment in favor of defendants, declaring defendants to be the owners in fee simple of the disputed property.

Defendants then requested costs, attorney fees, and an enhanced prevailing party fee. They requested attorney fees pursuant to ORS 20.105(1), because they had prevailed in the proceeding and plaintiffs had "no objectively reasonable basis" for their claims. They also requested an enhanced prevailing party fee under ORS 20.190(3), asserting that the factors to be considered under that statute, including whether plaintiffs' claims were objectively unreasonable, weighed in favor of awarding an enhanced prevailing party fee. Over plaintiffs' objection, the trial court entered a supplemental judgment awarding defendants their requested costs and attorney fees, as well as a $5,000 enhanced prevailing party fee.

On appeal, plaintiffs challenge the award of attorney fees and the enhanced prevailing party fee. Plaintiffs do not dispute that defendants were the prevailing parties. Instead,

plaintiffs contend that the trial court erred in determining that their claims were objectively unreasonable.

Defendants respond that the trial court correctly determined that plaintiffs' claims were objectively unreasonable. With regard to plaintiffs' adverse possession claim, defendants contend that plaintiffs had actual knowledge, at least by the time that they filed their water permit application in late December 1994, that their property did not extend to the pond's edge. Because plaintiffs must have believed that they owned the disputed property throughout the 10-year vesting period to prevail on their claim, defendants argue that plaintiffs' claim was not objectively reasonable. Defendants also argue that plaintiffs did not produce evidence to support each element of their boundary by agreement claim. In particular, defendants assert that there is no evidence that either plaintiffs or defendants were ever uncertain as to the true property line. Furthermore, according to defendants, plaintiffs produced no evidence that the parties ever agreed that the property line was the edge of the pond. Because the success of plaintiffs' trespass claim depended on the success of one of their other claims, defendants assert that that claim too was objectively unreasonable.

Plaintiffs reply that all the evidence on which defendants rely is simply beside the point, because plaintiffs' own testimony suffices to establish the objectively reasonable basis that the law requires.

With regard to both the award of attorney fees under ORS 20.105(1) and the enhanced prevailing party fee under ORS 20.190(3), plaintiffs assign error only to the trial court's determination that their claims were objectively unreasonable. ORS 20.105(1) provides, in part:

> "In any civil action, suit or other proceeding in a circuit court * * *, the court shall award reasonable attorney fees to a party against whom a claim * * * is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim * * *, upon a finding by the court * * * that there was *no objectively reasonable basis for asserting the claim* * * *."

(Emphasis added.) Under ORS 20.190(3), a trial court "may award to the prevailing party up to an additional $5,000 as a

prevailing party fee." In determining whether to make such an award, the court must consider several factors. ORS 20.190(3)(a) - (h). One of those factors is "[t]he *objective reasonableness* of the claims and defenses asserted by the parties." ORS 20.190(3)(b) (emphasis added).

Those two phrases—"no objectively reasonable basis" and "objective reasonableness"—require the same analysis. Under ORS 20.105(1), in determining whether a party had an objectively reasonable basis for asserting a particular claim, the primary issue is whether there is evidence in the record to support the claim—that is, whether the party's claim is " 'entirely devoid of legal or factual support at the time it was made.' " *Dimeo v. Gesik*, 195 Or App 362, 371, 98 P3d 397 (2004), *adh'd to as modified on recons*, 197 Or App 560, 106 P3d 697 (2005) (quoting *Mattiza v. Foster*, 311 Or 1, 8, 803 P2d 723 (1990), in regard to an earlier version of ORS 20.105(1) that referred to "meritless" claims). "That the evidence at trial turns out to be weaker * * * is not properly part of the inquiry." *Dimeo*, 195 Or App at 371. A position is objectively unreasonable "if it is not supported by the law *as applied to the facts*." *Mattiza*, 311 Or at 8 n 10 (emphasis in original). The phrase "objective reasonableness," as used in ORS 20.190(3)(b), also means that the party's position is not " 'entirely devoid of legal or factual support at the time it was made.' " *North Marion Sch. Dist. #15 v. Acstar Ins. Co.*, 206 Or App 593, 607, 138 P3d 876 (2006), *aff'd*, 343 Or 305, 169 P3d 1224 (2007) (quoting *Mattiza*, 311 Or at 8).

We review the trial court's determination that plaintiffs' claims in this case were objectively unreasonable for errors of law. *Secor Investments, LLC v. Anderegg*, 188 Or App 154, 175, 71 P3d 538, *rev den*, 336 Or 146 (2003). Because whether a particular claim was objectively unreasonable pertains to the substance of that claim, we turn to the requirements for the claims at issue in this case.

Plaintiffs first claimed that they acquired the disputed property by adverse possession. To succeed on an adverse possession claim, the claimant must "have maintained actual, open, notorious, exclusive, hostile and continuous possession of the property for a period of 10 years." ORS 105.620(1)(a). In addition, the claimant must have "had the

honest belief that the [party making a claim of adverse possession] was the actual owner of the property." ORS 105.620(1)(b). That belief must continue throughout the 10-year vesting period, ORS 105.620(1)(b)(A); have an "objective basis," ORS 105.620(1)(b)(B); and be reasonable under the circumstances, ORS 105.620(1)(b)(C).

The only element of plaintiffs' adverse possession claim at issue on appeal is whether plaintiffs held the necessary "honest belief" that they owned the disputed property. As we have noted, plaintiffs assert that there is evidence in the record—their own testimony—that they held the necessary honest belief. Plaintiffs admit that their testimony was largely disbelieved by the trial court and that it was contradicted by documentary evidence and the testimony of other witnesses. They contend, however, that their testimony renders their adverse possession claim objectively reasonable because it is some evidence to support that element of their claim.

Defendants respond that plaintiffs' testimony, which is directly counter to other evidence of their belief, does not render their claim objectively reasonable. In particular, defendants contend, Exhibit B to plaintiffs' water permit application, completed in late 1994, is evidence that plaintiffs themselves did not believe that they owned the disputed property throughout the 10-year vesting period. Defendants contend that that evidence renders plaintiffs' claim objectively unreasonable, because, at the time they brought their claim, plaintiffs knew that they did not satisfy each element of their claim.

We agree with defendants. As we have noted, plaintiffs' claim is objectively reasonable if it is "supported by the law *as applied to the facts." Mattiza,* 311 Or at 8 n 10 (emphasis in original). Although the weight of the evidence is not relevant to our inquiry, *Dimeo,* 195 Or App at 371, the evidence must lend at least some support to each element of the claim. On its face, Exhibit B to plaintiffs' water permit application, in conjunction with the aerial photograph also attached to that application, demonstrates that plaintiffs knew that their property did not extend to the pond's edge. The line that plaintiff Kathleen Lenn drew as representing the property

line is nearly identical to the property line on the aerial photograph. Simply because plaintiffs testified that they believed that they owned the disputed property throughout the vesting period, when other evidence directly contradicts that testimony, does not mean that their claim was objectively reasonable.

Even assuming that plaintiffs believed that they owned the disputed property throughout the vesting period, the "honest belief" for an adverse possession claim must have an "objective basis," ORS 105.620(1)(b)(B), and be reasonable under the circumstances, ORS 105.620(1)(b)(C). Such a belief, even if *subjectively* held by plaintiffs, is not *objectively* reasonable in light of the entirety of their water permit application.

■■ We turn next to plaintiffs' boundary by agreement claim. The elements of boundary by agreement are (1) uncertainty or dispute between property owners as to the true location of the boundary between their properties; (2) an express or implied agreement between the parties to recognize a particular line as the boundary intended to "resolve the uncertainty"; and (3) subsequent activities by the parties evidencing their agreement. *Ross v. DeLorenzo*, 65 Or App 586, 590, 672 P2d 1338 (1983), *rev den*, 296 Or 411 (1984).

Plaintiffs argue that there was evidence that both parties were uncertain about the true property line. They contend that their own uncertainty was evidenced by the fact that the pond's water level fluctuates and, thus, the property line shifts based on the time of year. Defendants' uncertainty, plaintiffs contend, was evidenced by the easement that followed a portion of the true property line; plaintiffs insist that, had defendants known the true property line, defendants would not have needed the easement. Plaintiffs insist that the easement was also an implied agreement that the pond's edge would be the property line, and that plaintiffs' open and obvious activities on the disputed property evidenced the parties' agreement.

Defendants respond that there is no evidence that either plaintiffs or defendants were uncertain about the true property line. They also contend that there is no evidence that the parties ever discussed any uncertainty regarding the

true property line, let alone came to an agreement, whether express or implied, with the intent of resolving an uncertainty.

We again agree with defendants. There is no evidence that there was a *mutual* uncertainty about the true property line, which the parties resolved by an agreement. Defendants maintained that they knew the true property line all along. The agreement relied on by plaintiffs is the document granting defendants an easement. The undisputed purpose of that agreement was to convey an easement, *not* to fix an uncertain property line. Because plaintiffs did not produce evidence to support each element of their boundary by agreement claim, the claim was not objectively reasonable.

■     Plaintiffs also claimed that defendants committed trespass. Because plaintiffs are not the deed owners of the disputed property, the success of their trespass claim depended on the success of one of their other claims. Because we have determined that those claims were objectively unreasonable, we similarly conclude that plaintiffs' trespass claim was not objectively reasonable.

■     Because none of plaintiffs' claims had an objectively reasonable basis, defendants, as the prevailing parties, were entitled to an award of attorney fees under ORS 20.105(1). With respect to the trial court's evaluation of the factors under ORS 20.190(3), plaintiffs' only complaint is that the court's legal conclusion that their claims were not objectively reasonable was erroneous. We have concluded that the court did not err in that regard. We review the court's ultimate decision to award an enhanced prevailing party fee for an abuse of discretion, *Shumake v. Foshee*, 197 Or App 255, 260-61, 105 P3d 919 (2005), and find no abuse of discretion.

Accordingly, the trial court did not err in awarding attorney fees and an enhanced prevailing party fee.

Affirmed.