IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

FERMENT BREWING COMPANY LLC and )
SW 2ND & PORTWAY, LLC,              )
                                   )
            Plaintiffs,            )    TC-MD 230005N
                                   )
        v.                         )
                                   )
HOOD RIVER COUNTY ASSESSOR,        )
                                   )
            Defendant.             )    **DECISION**

This matter came before the court on Defendant's Motion for Attorney Fees, Costs,

Disbursements, and Penalty (Motion), filed April 28, 2023. Plaintiffs failed to file a response

within the time agreed upon by the parties or subsequently. (*See* Order of Dismissal, Apr 13,

2023 (Plaintiffs agreed to file response by May 8, 2023).) Oral argument was held by remote

means on May 23, 2023. Michael Mangan, Oregon attorney, appeared on behalf of Plaintiffs.

Chris O'Neill (O'Neill), Oregon attorney, appeared on behalf of Defendant.

## I. STATEMENTS OF FACTS

Plaintiffs filed their Complaint on January 3, 2023, challenging Defendant's denial of an

enterprise zone (EZ) exemption claim for property identified as Accounts 21212 and 15725

(subject properties) for the 2022-23 tax year. (Compl at 1.) Plaintiffs alleged that Defendant

either denied their EZ exemption without notice or "retaliated against the property owner as a

result of its tenant's [EZ] exemption denial and valuation appeal." (*Id.*) They requested a real

market value of $8,000,000, as well as a grant of EZ exemption. (*Id.*) Plaintiffs attached the

2022-23 property tax statements for the subject properties, as well as for Account 21213. (*Id.* at

3, 5, 9.)

/ / /

In response to the Complaint, Defendant moved to dismiss because Plaintiffs have "already received the three years of property tax exemption available for eligible activities within the Enterprise Zone (which is being litigated by Plaintiff Ferment Brewing Company (Plaintiff Ferment) in case TC-MD 220020N) and [have] not applied for nor received an extended abatement to be eligible for any additional years of exemptions." (Def's Mot to Dismiss at 1.) Defendant requested attorney fees, costs, and disbursements because Plaintiffs lacked an objectively reasonable basis for filing the Complaint. (*Id.*) After conferring with Defendant and requesting a few extensions of time, Plaintiffs filed a Motion to Dismiss with Prejudice on April 13, 2023, and the court granted that motion by order entered the same day. The court's Order of Dismissal is incorporated herein by reference. The remaining issues for decision from Defendant's Motion to Dismiss (and reiterated in its Motion for Attorney Fees, Costs and Disbursement and Penalty) are whether the court must impose a frivolous appeal penalty under ORS 305.437 and award attorney fees under ORS 20.105(1). (Def's Mot to Dismiss at 4-5.)

A.      *History of Litigation, Subject Properties and Related Property*

Plaintiffs characterized their 2022-23 tax year appeal as a "protective appeal" and, as Defendant noted, a related appeal concerning earlier tax years was pending at the time Plaintiffs filed their 2022-23 Complaint. (Ptfs' Resp at 3.) The prior appeal challenged the assessment of properties identified as Accounts 21439 and 21440 for the 2019-20 through 2021-22 tax years, contending that they were entitled to EZ exemption but Defendant denied the exemption in part. *See Ferment Brewing Co. LLC v. Hood River County Assessor and Dept. of Rev.*, TC-MD 220020N (Order Denying Mot to Dismiss at 5, Sept 15, 2022). Following briefing and oral argument in the prior appeal, the court entered a 14-page Order denying the county's motion to dismiss. In that Order, the court made fact findings about the properties appealed and related

accounts, based on information presented by the parties. (*See id.* at 1-6.) Before summarizing the relevant portions of that Order, the court identifies the various accounts involved:

| Account number | Description | Subject of TC-MD 230005N Complaint |
|---|---|---|
| Account 21440 | Exemption placeholder – includes Accounts 15725, 21439, and 21213 | Not named in the Complaint |
| Account 15725 | The building | Subject property |
| Account 21439 | Tenant improvements in a different building than Account 15725 | Not named in the Complaint |
| Account 21213 | Parking lot | Not named in the Complaint[1] |
| Account 21212 | Land | Subject property |

The following portions of the September 15, 2022, Order are relevant here:

- Plaintiff Ferment filed an EZ Authorization Application on April 20, 2016, that was approved by Defendant on March 27, 2017. (Order at 2-3.)

- Plaintiff Ferment filed a Construction in Process (CIP) EZ Exemption Application on March 20, 2017, for a "building, structure, or addition" with an estimated completion date in October 2017. (Order at 3, n5.)

- Plaintiff Ferment filed an EZ exemption claim on April 1, 2019, for the building, pursuant to the authorization submitted April 20, 2016, and approved March 27, 2017. (Order at 4.) The claim lists the total cost of investment property as $4,809,982. (*Id.*) A property schedule was attached to the claim form detailing that investment. (*Id.*)

- Also in 2019, "Plaintiff [Ferment] filed a CIP EZ Exemption Application for tenant improvements comprised of a 'commercial kombucha brewery production and packaging, distillery production and packaging plant and storage' " and Defendant

///

---

[1] A property tax statement for Account 21213 was included as an attachment to the Complaint without explanation.

approved that application on November 1, 2019. (Order at 4, n6.) Plaintiff Ferment's "tenant improvements [are] appraised by the Department of Revenue." (Order at 6.)

- When Defendant approved Plaintiff Ferment's 2019 EZ exemption claim, it used the exemption placeholder account, which included portions of the building, parking lot, and tenant improvements. (*Id*. at 4, 6.)

- The prior case Order makes no reference to the subject property's Account 21212.

In this 2022-23 appeal, the parties have provided some of the same exhibits as presented in the prior appeal, as well as new exhibits and evidence. The following portions of those exhibits are relevant here:

- Plaintiff Ferment's EZ authorization did not seek an extended exemption period beyond three years. (Decl of Beebe at 1-2.)

- Plaintiff Ferment's 2019 EZ claim form identified the authorized exemption period as three years. (Def's Mot to Dismiss, Ex 3 at 1-2.[2]) By letter dated November 1, 2019, Defendant granted the claim and instructed Plaintiff to file a new claim by April 1, 2020, to continue the claim for the 2020-21 tax year. (*Id*. at 3.)

- All property listed on Plaintiff Ferment's 2019 property schedule for the building was placed in service by 2018. (Def's Mot to Dismiss, Ex 4.[3]) Plaintiffs did not subsequently submit any other property schedules. (Decl of Beebe at 1-2.)

- Plaintiff Ferment submitted a second EZ claim for the building on June 30, 2020. (Def's Mot to Dismiss, Ex 3 at 4-5.) It pertained to the authorization submitted April 20, 2016,

---

[2] Plaintiff Ferment's 2019-20 EZ claim form for Account 15725 and Defendant's letter granting the claim were submitted in the prior appeal, but the court did not make a finding about the period of exemption listed.

[3] This property schedule was also submitted in the prior appeal, but the court did not make a finding about the date that property was placed in service.

and approved March 27, 2017. (*Id.*) It listed the exemption period as three years and identified the first year of exemption as 2019 with an investment of $4,809,982. (*Id.*) By letter dated October 23, 2020, Defendant approved the claim for the 2020-21 tax year and reminded Plaintiff of the deadline to file for the 2021-22 tax year. (*Id.* at 6.)

- Plaintiff Ferment submitted a third EZ claim for the building on March 30, 2021. (Def's Mot to Dismiss, Ex 3 at 8-9.) It pertained to the authorization submitted April 20, 2016, and approved March 27, 2017. (*Id.*) It listed the exemption period as three years but identified the first year of exemption as 2018 with an investment of $4,809,982. (*Id.*) By letter dated July 16, 2021, Defendant approved the application and wrote:

  "The 2021-22 tax year is the final year the property will qualify for exemption under this authorization; however, to complete the Enterprise Zone Exemption, the law requires you to file a final claim form after January 1, 2022, and on or before April 1, 2022, to avoid disqualification and/or late filing penalties."

(*Id.* at 10 (emphasis in original).)

- Plaintiff Ferment filed a fourth EZ claim for the building on March 31, 2022. (Def's Mot to Dismiss, Ex 5 at 1-2.) It indicated the exemption period was three years and the first year of the exemption was 2018 with an investment of $4,809,982. (*Id.*) By letter dated August 30, 2022, Defendant approved Plaintiff's claim for the 2022-23 tax year and stated: "The approval of this claim form will conclude the Enterprise Zone Exemption Authorization application approved on 3/27/2017." (*Id.* at 4.)

B.    *Plaintiffs' Exemption Claim for the 2022-23 Tax Year; Parties' Arguments on Motion*

Defendant argues that Plaintiffs' Complaint lacked an objectively reasonable basis at the time it was filed because it was entirely devoid of factual or legal support. (Def's Mot at 2-4.) Specifically, Plaintiff Ferment was authorized for three years of EZ exemption, it filed EZ claims for three years, it received EZ exemption for three years, and it received two notices over one

year apart notifying it that the 2021-22 tax year was the last year of EZ exemption. (*See generally* Def's Mot to Dismiss.) Thus, Defendant argues, there was no basis in fact or law for Plaintiffs to file an appeal claiming a fourth year of EZ exemption for the 2022-23 tax year. (*Id.* at 4.)

Plaintiffs make several arguments in support of the reasonableness of their Complaint. First, Plaintiffs argue that they had a reasonable belief that the EZ exemption did not begin until the 2020-21 tax year due to a CIP exemption claimed and received for the 2019-20 tax year. (*See* Ptfs' Resp at 2.) Plaintiffs allege that, "[p]rior to filing its complaint, the taxpayer confirmed that it had received a CIP Exemption for the 2019/20 tax year and that it received a three-year EZ Exemption approval." (*Id.*) After additional time, Plaintiffs produced a letter from Defendant dated November 1, 2019, approving a CIP exemption for the 2019-20 tax year for Account 21439 (tenant improvements), an account not under appeal in this matter. (Ptfs' Supp Resp at 5.[4]) Plaintiffs cite *United Streetcar, LLC v. Department of Revenue*, 23 OTR 418, 430 (2019): "The fact that the subject property was exempt pursuant to a CIP exemption for tax year 2011-12 proves that it was not entitled to, and could not have received, enterprise zone exemption for tax year 2011-12." (*Id.* at 1.)

Second, Plaintiffs believe that they properly filed an EZ exemption claim for the 2022-23 tax year and never received a denial notice from Defendant.[5] (Ptfs' Resp at 2-3.) Third, Plaintiffs argue that they filed their Complaint due to Defendant's "unusual and confusing

---

[4] As noted in the prior section, the related CIP exemption application, dated March 28, 2019, pertains to Account 21439 and identifies the property as a "commercial kombucha brewery production and packaging, distillery production and packaging plant and storage" at an estimated cost of $300,000. (Ptfs' Supp Resp at 6.)

[5] Plaintiffs did not address Defendant's letter dated August 30, 2022, concerning the 2022-23 tax year, or otherwise allege that they never received the letter.

actions." (*Id.* at 2.[6]) Specifically, Plaintiffs allege that Defendant mixed Plaintiffs' property with that of the owner Key Development Inc. into a single tax account. (*Id.*) Fourth, Plaintiffs note that the statute of limitations to file an appeal is short. (*Id.* at 3.)

Among its other arguments,[7] Defendant reiterates that Plaintiff Ferment was already in business by January 1, 2019, and filed its first EZ claim form on April 1, 2019, which directly contradicts Plaintiffs' claim that its first EZ exemption year was 2020-21. (*Id.* at 2.) Defendant agrees that Plaintiff Ferment applied for a CIP exemption for tenant improvements on April 1, 2019, but notes that exemption pertained to tenant improvements in a different building: Account 21439. (*Id.* at 2-3.) With respect to Plaintiffs' EZ claim form filed in 2022-23 for the subject property building, Defendant maintains that it "was not done to obtain an additional year of an EZ property tax exemption. Rather, that form was required to be filed pursuant to ORS 285C.220(1)(c) in order for Plaintiff[s] to avoid being disqualified." (Def's Reply at 2-3.[8])

C.  *Defendant's Attorney Fees*

Defendant requests total attorney fees of $5,642.50. (Decl of O'Neill at ¶ 20.) That is based on $4,892.50 for work performed through April 14, 2023, and a supplemental award of $750 for preparing for and attending oral argument and preparing any resulting orders or judgments. (Decl of O'Neill at ¶¶ 17-18, 20.) O'Neill has practiced law in Oregon since 1993 and is familiar with the substantive tax law in this case as well as related procedural rules. (*Id.* at

---

[6] Plaintiffs reference another related "companion case" filed by the property owner, *Key Development v. Hood River County Assessor*, TC-MD 200110R. (Ptfs' Resp at 2.) Plaintiffs' counsel also represents Key Development in that case.

[7] Defendant also argued that the property owner, not Plaintiffs, applied for and received exemptions for commercial property under construction for Account 15725. (Def Reply at 1-2.) *See also* Def's Reply Ex 2 (claim form and approval).

[8] ORS 285C.220(1)(c) requires the same EZ claim form to be filed "after the final assessment year of the exemption period."

¶14.) His billing rate was $175 per hour, which he believed was below the market average for lawyers with similar experience. (*Id.* at ¶ 19.) O'Neill billed $125 per hour for his paralegal's work, which he believed was also below market. (*Id.* at ¶ 19, Ex 5 (LCK items).)

The court takes notice of the Oregon State Bar's 2022 Economic Survey, which provided the following relevant figures for 2021.[9] The mean and median hourly billing rate for attorneys in private practice in Eastern Oregon, including Hood River County, was $288. (Survey at 11, 42.) For attorneys in private practice in Eastern Oregon with 21 to 30 years of experience, the mean hourly billing rate was $306 and the median was $320. (*Id.* at 43.) For attorneys in private practice in Eastern Oregon specializing in tax and estate planning, the mean hourly billing rate was $288 and the median was $275. (*Id.* at 45.) Plaintiffs did not challenge O'Neill's billing.

## II. ANALYSIS

The issues presented are whether the court must impose a penalty under ORS 305.437 and award attorney fees under ORS 20.105(1) because each of Plaintiffs' claims presented in this appeal lacked an objectively reasonable basis. Both statutes' operative provisions use the word "shall" and are, therefore, mandatory if the statutory conditions are met. *Jimenez v. Dept. of Rev.*, 24 OTR 618, 625 n 6 (2021), *aff'd*, 370 Or 543, 522 P3d 522 (2022). As the party seeking affirmative relief, Defendant bears the burden of proof by a preponderance of the evidence. ORS 305.427.[10]

Oregon law makes frivolous or groundless appeals subject to sanctions by this court. Specifically, ORS 305.437(1) states:

"Whenever it appears to the Oregon Tax Court that proceedings before it have been instituted or maintained by a taxpayer primarily for delay or that the taxpayer's

---

[9] Available at: https://www.osbar.org/surveys_research#economicsurveys

[10] The court's references to the Oregon Revised Statutes (ORS) are to 2021.

position in such proceeding is *frivolous or groundless*, a penalty in an amount not to exceed $5,000 shall be awarded to the Department of Revenue by the Oregon Tax Court in its judgment."

(Emphasis added.) "A taxpayer's position is 'frivolous' if there was *no objectively reasonable basis* for asserting the position." ORS 305.437(2)(a) (emphasis added). Similarly, ORS 20.105(1) states:

"In any civil action, suit or other proceeding in * * * the magistrate division of the Oregon Tax Court * * * the court shall award reasonable attorney fees to a party against whom a claim, defense or ground for appeal or review is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim, defense or ground, upon a finding by the court * * * that there was *no objectively reasonable basis* for asserting the claim, defense or ground for appeal."

(Emphasis added.) The penalty under ORS 305.437 and attorney fees under ORS 20.105(1) are not mutually exclusive and, indeed, use the same "no objectively reasonable basis" standard. *See, e.g., Routledge v. Dept. of Rev.*, 24 OTR 103, 123-124 (2020) (analyzing the two provisions together).

The court begins by examining the "no objectively reasonable basis" standard. For additional context, the court next considers related standards in state and federal rules of civil procedure. In light of those standards, the court considers whether Plaintiffs had an objectively reasonable basis for the claims made in their Complaint and, if not, the appropriate amount of the penalty and attorney fee award.

A.     *No Objectively Reasonable Basis Standard under ORS 305.437 and ORS 20.105(1)*

"[A] claim lacks an 'objectively reasonable basis' when it is 'entirely devoid of legal or factual support.' " *Patton v. Dept. of Rev.*, 18 OTR 256, 259 (2005). The standard requires more than simply having lost the case; rather, the claim must be "meritless," "groundless," or "without foundation." *Id.* at 260. An appeal is "frivolous, unreasonable, or without foundation when a reasonable lawyer would know that each of the arguments on appeal is not well grounded in fact or is not warranted either by existing law or by a reasonable argument for the extension,

modification, or reversal of existing law." *McCarthy v. Oregon Freeze Dry, Inc.*, 334 Or 77, 87, 46 P3d 721 (2002). The court considers "all the facts, circumstances, and law that a party or * * * its counsel knew or reasonably should have known." *Patton*, 18 OTR at 261. In the context of an appeal to the Regular Division of this court, the magistrate's decision serves as a baseline for what a reasonable attorney knew or should have known when filing the complaint. *Id.* at 262.

"[A] party has a continuing duty to evaluate its position throughout the course of litigation. * * * [A] claim that was objectively reasonable when asserted may become unreasonable when viewed in light of additional evidence or changes in the law." *Patton*, 18 OTR at 259, *quoting Dimeo v. Gesik*, 197 Or App 560, 698, 106 P3d 697 (2005); *see also Masse v. Dept. of Rev.*, 18 OTR 240 (2005) (evaluating reasonableness of claim at stages of case: Magistrate Division appeal, Regular Division appeal before trial, and trial). A party's claim might survive a motion to dismiss at trial under Tax Court Rule (TCR) 60,[11] but be groundless upon consideration of the opposing party's evidence. *See Freitag v. Dept. of Rev.*, 19 OTR 37 (2006). In *Freitag*, the taxpayer testified that the county's value for the property reflected a size error, but the county's evidence completely rebutted taxpayer's testimony. *Id.* at 42. Thus, the taxpayer's evidence was adequate to survive the motion to dismiss when given the presumption of validity, but "amount[ed] to nothing more than an ineffectual attack on the county's appraisal" when viewed in light of the county's evidence at trial. *Id.*

A few cases outside the tax context shed light on the standard in ORS 20.105(1). In *Dimeo*, the Oregon Court of Appeals reversed the trial court's determination that a bank's subrogation counterclaim lacked an objectively reasonable basis. 195 Or App at 362. The bank

---

[11] Under TCR 60, the court will dismiss a case at the close of the nonmoving party's evidence if the moving party "demonstrates that the record contains no evidence to support the nonmoving party's claim or claims." *Freitag*, 19 OTR at 40. The court does not weigh the evidence at this stage. *Id.*

had agreed to make a loan if it was in the first position. The bank received two title reports with conflicting information, so its manager called one of the title companies and had a conversation that led him to believe the issue would be resolved, but he never received confirmation of that in writing. *See id.* at 364-67. This issue at stake, subrogation,[12] had not been defined by an Oregon appellate court, nor had the court considered similar facts. *Id.* at 369-70. In finding an objectively reasonable basis for the bank's counterclaim, the Oregon Court of Appeals observed "it would be a rare case in which a party that has even some evidence to support the claim can be said to have no objectively reasonable basis for doing so." *Id.* at 371 (internal quotation marks omitted). Thus, the bank's evidence was reasonable at the start of the case, even if unpersuasive at trial. *Id.*

By contrast, in *Lenn v. Bottom*, 221 Or App 241, 190 P3d 399 (2008), the Oregon Court of Appeals upheld a trial court's award of attorney fees under ORS 20.105(1) where plaintiff had brought an action to obtain title to part of their neighbor's land by either adverse possession or boundary by agreement. The plaintiff's only evidence to support the adverse possession claim was testimony about their belief, but that testimony was contradicted by documentary evidence, including a prior water permit application submitted by the plaintiff that showed the land in question belonged to the neighbor. *Id.* at 249-50. Similarly, the plaintiff's boundary by agreement claim was undermined by evidence of an easement granted by the neighbor showing that it was the neighbor's land. *Id.* at 251.

/ / /

/ / /

---

[12] Subrogation is an equitable doctrine that, among other things, required the bank to show it had "excusable ignorance" of prior liens.

B.    *Reasonable Inquiry Standard Under TCR 17, ORCP 17, and FRCP 11*

This case concerns the early stages of litigation: Plaintiffs' Complaint and subsequent responses to Defendant's Motion to Dismiss, before ultimately moving to dismiss their own Complaint. Although not controlling here, TCR 17 C and ORCP 17[13] each contain pleading requirements incorporating similar concepts as the "no objectively reasonable basis" standard. An attorney must certify that claims, defenses, and other legal positions "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." TCR 17 C(3). A party or an attorney must certify that allegations and factual assertions are supported by evidence, or "will be supported by evidence after further investigation and discovery." TCR 17 C(4). All certifications must be "based on the person's reasonable knowledge, information, and belief, formed after the making of such inquiry as is reasonable under the circumstances." TCR 17 C(1). The creation of ORCP 17 was "patterned upon FRCP 11." *Seely v. Hanson*, 317 Or 476, 480-81, 857 P2d 121 (1993).[14] For example, FRCP 11(b) imposes similar certification requirements formed after a reasonable inquiry as are now found in ORCP 17 C.

Federal case law identifies considerations to determine what investigation is required under the circumstances, and examples of unreasonable prefiling inquiry. A potential cause of action discovered shortly before expiration of the statute of limitations justifies "a more cursory

---

[13] "If circumstances arise that are not covered by a Magistrate Division rule, the rules of the Regular Division may be used as a guide to the extent relevant." Preface to Magistrate Division Rules. TCR 17 C contains the same wording as ORCP 17 C. "To the extent that the wording of a TCR is the same as that of an ORCP, cases interpreting the ORCP may be looked to as authority for interpreting the TCR." Preface to the TCRs.

[14] When it was originally enacted, ORS 20.105(1) included a "bad faith" requirement and was modeled after a similar standard in federal law. *See Mattiza v. Foster*, 311 Or 1, 6, 803 P2d 723 (1990). The requirement that a party acted in "bad faith, wantonly, or solely for oppressive reasons" was removed from ORS 20.105(1) in 1995. *See IDS Property Casualty Ins. Co. v. Mullins*, 726 Fed. Appx. 597 (9th Cir 2018). Now, the statute includes the "no objectively reasonable basis" standard quoted above.

inquiry." *Townsend v. Holman Consulting Corp.*, 929 F2d 1358, 1364 (9th Cir 1990), *citing Cooter & Gell v. Hartmarx Corp.,* 496 US 384, 110 S Ct 2447, 2459, 110 L Ed 2d 359 (1990). "If the relevant facts are in control of the opposing party, more leeway must be given to make allegations in the early stages of litigation that may not be well-grounded." *Id.*

By contrast, a plaintiff's claim is baseless due to lack of inquiry where the plaintiff's attorney maintains a claim against a defendant after "conduct[ing] absolutely no inquiry" and despite a defendant's sworn affidavits contradicting the claim. *See Townsend*, 929 F2d at 1366 (plaintiff's attorney made claim in original complaint and maintained it in amended complaint despite no inquiry). An attorney's reliance on "conclusory representations of a client, even if the client is a long-time friend" was unreasonable where the attorney failed to make any independent inquiry, such as reviewing attachments to a letter or asking the client about "the manner, nature or amount of money lost." *Worldwide Primates, Inc. v. McGreal*, 87 F3d 1252, 1255 (11th Cir 1996).

In another instance, a plaintiff's claims relating to a product manufactured in 1985 were unreasonable against a defendant that did not incorporate or start doing business until 1986, where plaintiff's attorney conceded he knew the incorporation date. *Jones v. International Riding Helmets, Ltc.*, 49 F3d 692, 693 (11th Cir 1995). The plaintiff's attorney maintained that he was unaware whether the product had been purchased in 1985 or 1986 based on talking to the plaintiff ("might have been 1986"); talking to a retailer that referred to a name similar to the defendant's; and talking to a "confidential informant" that named defendant. *Id.* at 694. The district court did not believe plaintiff's attorney, noting that discovery requests were all directed to 1985 and earlier. *Id.* On appeal, the reviewing court upheld the district court's determination:

/ / /

consideration of the discovery requests was not impermissible hindsight, but rather revealed the claim to be meritless. *Id.* at 695.[15]

C.       *Whether Plaintiffs' Claims Had an Objectively Reasonable Basis*

To review, Plaintiffs' Complaint presents four possible claims for the 2022-23 tax year: 1) Defendant denied Plaintiffs' EZ exemption claim for the subject properties without notice; 2) Defendant wrongfully denied Plaintiffs' EZ claim because the subject properties qualify for exemption; 3) Defendant retaliated against the subject property's owner due to Plaintiffs' EZ exemption denial and valuation appeal; and 4) Defendant overvalued the subject property. In subsequent briefing, Plaintiffs appear to focus on the first two claims and abandon the third and fourth claims without mention. The court addresses Plaintiff's four arguments in support of the reasonableness of their Complaint in turn.

As a preliminary matter, the court notes that Plaintiff Ferment's EZ authorization was approved in 2017 for three years, without extension, and Plaintiffs have not contested that fact. Plaintiff Ferment's EZ claim forms consistently refer to the three-year period of exemption.

1.       *The EZ exemption did not begin until 2020-21 tax year due to CIP exemption received for the 2019-20 tax year*

The CIP exemption referenced by Plaintiffs pertains to its tenant improvements (Account 21439), which is not part of this appeal. The tenant improvements account was not named in Plaintiffs' Complaint and does not appear on any of the EZ exemption claims filed for the 2019-20 through 2022-23 tax year that were submitted to the court. Those claim forms each reference

---

[15] The reviewing court acknowledged some circumstances in which a plaintiff must name multiple defendants and rely on discovery to determine which defendant was responsible for the injury, but this was not such a case because the plaintiff knew the specific defendant was not responsible. 49 F3d at 696.

the building (Account 15725).[16]  Although it is correct that a property receiving a CIP exemption could not receive an EZ exemption in the same tax year,[17] Plaintiffs have not presented any evidence that the subject properties received a CIP exemption in the 2019-20 tax year or otherwise connected the tenant improvements account to the subject properties.

The property schedule attached to Plaintiff Ferment's 2019-20 EZ claim stated that all listed property was placed in service by 2018, contradicting Plaintiffs' claim that some property was still in construction.  If Plaintiffs wished to claim exemption for additional qualified property after the 2019-20 tax year, they were required to include additional property schedules with subsequent claim forms.  ORS 285C.225(3)(a).  Plaintiffs produced no such property schedules and Defendant's witness Beebe declared none were filed.  In sum, the 2019-20 CIP exemption for the tenant improvements does not provide a reasonable basis to conclude that the EZ exemption for the building began in 2020-21, contrary to the several EZ claim forms filed by Plaintiff Ferment stating the EZ exemption begin in the 2019-20 tax year or earlier, and the 2019 property schedule.

2.      *Plaintiffs properly claimed 2022-23 exemption but never received denial notice*

Plaintiffs claim that they appealed the 2022-23 tax year because they "believed" that they had not received a denial letter from Defendant.  In response, Defendant produced a letter dated July 16, 2021, notifying Plaintiff Ferment that the 2021-22 tax year was the last year of EZ exemption for the building and reminding Plaintiff that a 2022-23 EZ claim form was required to complete the exemption and avoid disqualification or penalties.  Defendant produced a second letter, dated August 30, 2022, sent in response to Plaintiffs' 2022-23 EZ claim form stating that

---

[16] The court received no information concerning Account 21212 beyond the tax statement, which shows that it is a land-only account.

[17] *See United Streetcar LLC v. Dept. of Rev.*, 23 OTR 418, 429-30 (2019).

approval of the claim "will conclude the [EZ] Exemption Authorization application approved on 3/27/2017." Plaintiffs did not allege that they failed to receive those letters, and Plaintiffs have not alleged or identified any defects in Defendant's letters. Plaintiffs' belief that they received inadequate notice does not have any apparent factual support. As discussed above, Plaintiffs' belief that the building was entitled to 2022-23 EZ exemption is unsupported.

3.    *Plaintiffs had to file their Complaint due to confusion created by Defendant*

Plaintiffs argue that Defendant created confusion by mixing Plaintiffs' property with that of the building's owner into a single tax account. The implication of Plaintiffs' argument is that this appeal was required to sort out which property was assigned to each tax account. Plaintiffs' argument might be more compelling but for the 14-page order entered by this court on September 15, 2022, in a prior tax year appeal in which the court made findings about numerous property tax accounts, including the building and tenant improvements. The order gave basic descriptions of the property in each account. The court's findings were based on evidence submitted by the same attorneys appearing in this case. A reasonable lawyer knew or should have known about the order prior to filing this appeal. Plaintiffs have not explained how their confusion has persisted despite the court's order or identified any new facts creating confusion.

4.    *Plaintiffs faced a short statute of limitations and needed more information*

As noted in the federal case law cited earlier in this decision, a short time in which to file an appeal and a need to access relevant facts in the opposing party's possession are both reasons why a court should tolerate a party's "more cursory inquiry" or less "well-grounded" factual allegations. *See Townsend*, 929 at 1364. In the Magistrate Division, parties are often confronted with short statutes of limitation of 30 or 90 days, as was true here. *See* ORS 305.280. However, Plaintiffs identified no facts in Defendant's possession to be discovered. Plaintiffs instead

sought more time to review their *own* records.  (Ptfs' Supp Resp at 3.)  That need may be justified in some cases,[18] particularly when combined with a short statute of limitations.  Here, however, Plaintiffs' purported need to search their own records is unreasonable in light of Plaintiff Ferment's prior litigation, which commenced January 7, 2022, and the court's order entered September 15, 2022, including relevant findings of fact based on the parties' evidence.  Both the 2019-20 EZ claim form for the building and the 2019-20 CIP exemption application for the tenant improvements were prepared by Plaintiff Ferment, submitted to the court in the prior case, and referenced in the court's order.  The subsequent EZ claim forms for the building were also prepared by Plaintiff Ferment and, presumably, in its possession.  It is unclear what additional facts Plaintiffs needed when they filed the Complaint.

5.  *Conclusion regarding no objectively reasonable basis*

The court finds that Plaintiffs have not identified any objectively reasonable basis for the claims made in this appeal.  Plaintiffs urge the court not to award attorney fees because the Magistrate Division is "supposed to be an informal procedure" and taxpayers have limited time to review and file appeals, and to confer with the defendant. (Ptfs' Resp at 3.)  Plaintiffs also warn that the possibility of attorney fees would have a chilling effect on filings. (*See id.*)  The court agrees with Plaintiffs that the Magistrate Division is designed to be accessible: magistrates are not bound by "statutory rules of evidence or by technical or formal rules of procedure * * *." ORS 305.501(4).  Consistent with that statutory charge, the Magistrate Division requires a relatively simple complaint setting out the plaintiff's interest, facts showing how the plaintiff is aggrieved, and reasons why the defendant's order, act, omission or determination should be

---

[18] Unlike cases involving voluminous records in taxpayer's possession (*e.g.*, some income tax cases), the relevant documents here are relatively brief and many were available and submitted in the prior appeal.

reversed or modified. *See* TCR-MD 1 B.[19]  However, ORS 20.105(1) specifically lists the Magistrate Division in its directive to award attorney fees when a claim, defense, or ground is asserted without an objectively reasonable basis.[20]  As such, because Plaintiffs' claims lacked an objectively reasonable basis, the court must award attorney fees here.

In concluding that a penalty and attorney fees are warranted in this case, the court notes a couple of unique aspects of the case.  First, the property appealed (the building) was the subject of prior litigation and a published order that included findings of fact about that account.  That order noted that Plaintiff Ferment filed an EZ exemption claim for the 2019-20 tax year, contrary to Plaintiffs' allegation in this case that the 2020-21 tax year was the first year of exemption.  Second, many of the relevant documents were prepared by Plaintiff Ferment and contain statements that contradict Plaintiffs' claims here.  The EZ claim forms for the building each state that the EZ exemption began in the 2019-20 tax year or earlier, and the only property schedule produced reports that all property was placed in service by 2018.  It appears Plaintiffs failed to make a reasonable review of their own records before filing their Complaint.  For the foregoing reasons, the court concludes that a penalty and attorney fees must be imposed.

D.    *Amount of Penalty and Attorney Fees*

With respect to the penalty required under ORS 305.437, the court finds an amount of $500 is appropriate here.  Plaintiffs have not previously made frivolous claims before this court, and Plaintiffs voluntarily dismissed their own appeal.[21]

---

[19] The court provides one-page complaint forms on its website for parties' convenience.

[20] The Magistrate Division was added to ORS 20.105(1) in 2021.  *See* 2021 Or Laws c 555, sec 5. However, this court had previously determined that the Magistrate Division has authority to award attorney fees under ORS 20.105(1) before the addition of that specific language.  *See Lauer v. Grant County Assessor*, TC-MD 200253N, 2021 WL 365836 (Or Tax M Div, Feb 3, 2021).

[21] ORS 305.437 contains no standards for determining the amount of the penalty.  This court has often considered whether taxpayer previously made a frivolous claim or persisted with a frivolous claim through multiple

To determine an award of reasonable attorney fees under ORS 20.105(1), the court must consider the factors set forth in ORS 20.075(1) and (2). *Jimenez v. Dept. of Rev.*, 25 OTR 55, 56 (2022); *see* ORS 20.105(1). With respect to the ORS 20.075(1) factors,[22] most are addressed in the preceding analysis, including Plaintiffs' insufficient prefiling investigation; the objective reasonableness (or lack thereof) of Plaintiffs' claims; and whether an award of attorney fees would deter others from asserting good faith claims or defenses in similar cases in the Magistrate Division. Magistrate decisions are made in writing and published on the court's website (and typically indexed by subscription-based reporters), so an award of attorney fees may deter others from asserting meritless claims and defenses. *See* ORS 305.501(4)(b) (referencing written decisions). The court is not aware of attempts to settle this case, though Plaintiffs' counsel wrote that the parties did not confer either before or after Defendant filed its Motion to Dismiss. (Ptfs'

---

appeals. *See, e.g., Jimenez v. Dept. of Rev.*, 24 OTR 618 (2021) (Regular Division imposed $4,000 penalty after magistrate had imposed $500 penalty); *Routledge v. Dept. of Rev.*, 24 OTR 103 (2020) (Regular Division imposed $4,000 penalty after magistrate had imposed $1,000 penalty); *Glasgow v. Dept. of Rev.*, TC-MD 160033R, 2016 WL 4264626 (Or Tax M Div, Aug 12, 2016) (magistrate imposed $3,000 penalty where taxpayer had previously made frivolous claims in Magistrate Division, Regular Division, and before Oregon Supreme Court).

[22] ORS 20.075(1) lists the following factors:

(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

(b) The objective reasonableness of the claims and defenses asserted by the parties.

(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

Resp at 2-3.) The prevailing party fee under ORS 20.190 is not typically available in this court. *Johnson v. Dept. of Rev.*, TC 3802, 1996 WL 622215 (Or Tax, Oct 23, 1996); *see also* ORS 20.075(1)(g) (directing court to consider amount of prevailing party fee under ORS 20.190).

With respect to the factors in ORS 20.075(2),[23] the court finds that O'Neill's hourly billing rate is below the median and mean rates for attorneys in Hood River County, for attorneys with 21 to 30 years' experience, and for attorneys specializing in tax law. The precise amount in controversy is unclear, but the potential refund credit of $30,000 gives an approximate amount. (*See* Compl at 7.) That is compared with the result of no change to the 2022-23 property taxes assessed due to Plaintiffs' dismissal of the Complaint. The questions presented in this case were not novel or difficult legal questions, but some amount of time and skill was required to review the pleadings, file motions and replies, and appear for hearings. In another case resolved by motion to dismiss, this court awarded attorney fees of $3,488 under ORS 20.105(1), reduced[24]

---

[23] ORS 20.075(2) lists the following factors:

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

(i) Whether the attorney performed the services on a pro bono basis or the award of attorney fees otherwise promotes access to justice.

[24] The court in *Lauer* reduced the requested amount of fees for a supplemental brief from 8.7 hours to 4.0 hours – a reduction of 4.7 hours of attorney time – due to an unreasonable amount of time relative to the length and quality of the supplemental brief. No analogous reduction is warranted in the present case.

from a claimed amount of $4,294 based on 26.8 hours of work. *See Lauer v. Grant County Assessor*, TC-MD 200253N, 2021 WL 1017150 (Or Tax M Div, Mar 17, 2021). O'Neill's requested fees of $4,892.50 based on 31.1 hours of work are similar and reasonable considering the work performed. The additional factors in ORS 20.075(2) are either neutral or inapt for the facts of this case.

Defendant asks for a supplemental award of $750 for preparing for and attending the oral argument on its request for attorney fees, and for preparing any resulting orders and judgments. Generally, so called "fees on fees" may be recovered. *See Lauer*, 2021 WL 1017150 at *4. O'Neill's estimate appears to be based on anticipated work totaling 4.3 hours at his rate of $175 per hour. O'Neill's bill states 1.3 hours were required for the initial case management conference held February 28, 2023, and up to 3.4 hours for the second case management held April 13, 2023. (*See* Decl of O'Neill, Ex 5 at 3-4 (O'Neill entries April 6 through April 13, 2023).[25]) The court finds that 3.0 hours of work is reasonable for an oral argument that was scheduled for 1.0 hour, but in fact took less time. The court awards an additional $575 for that work based on O'Neill's billing rate. Because a money award and judgment will be required to effectuate the court's decision to conclude this matter, the court awards an additional $175, an hour of time at O'Neill's hourly rate, to prepare the documents as requested. In total, Defendant is awarded attorney fees of $5,642.50.

### III. CONCLUSION

Upon careful consideration, the court concludes that Plaintiffs' claims presented in this appeal lacked an objectively reasonable basis. Accordingly, the court imposes a penalty on

/ / /

---

[25] Some activities in those entries reflect responding to Plaintiffs' motion for extension of time.

Plaintiffs of $500 under ORS 305.437 and awards Defendant attorney fees of $5,642.50 under ORS 20.105(1). Now, therefore,

IT IS DECIDED that Plaintiffs' appeal of Accounts 21212 and 15725 for the 2022-23 tax year is dismissed with prejudice.

IT IS FURTHER DECIDED that Plaintiffs shall pay a penalty of $500 to the Oregon Department of Revenue under ORS 305.437.

IT IS FURTHER DECIDED that Defendant is awarded attorney fees of $5,642.50 under ORS 20.105(1). Counsel for Defendant shall submit an appropriate form of judgment.

Dates this _____ day of December 2023.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within __60__ days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Allison R. Boomer and entered on December 27, 2023.*